

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1712-13

---

**DONALD AEKINS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### TRAVIS COUNTY

---

COCHRAN, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion in which PRICE, KEASLER and HERVEY, JJ., joined. KEASLER, J., filed a concurring opinion in which KELLER, P.J., and HERVEY, J., joined.

### O P I N I O N

A jury found appellant, Donald Aekins, guilty of three counts of sexual assault. The court of appeals held that his convictions for both contacting and penetrating the adult victim's sexual organ with his mouth violated his right against multiple punishments for the same offense because the contact and penetration were based on the same act. We granted

the State Prosecuting Attorney's petition for discretionary review[1] to clarify that (1) when a single exposure or contact offense is "incident to and subsumed by" a penetration offense, the offenses are the "same" for double-jeopardy purposes, and (2) the Texas Legislature has not manifested its intent to allow multiple punishments for those "same" offenses, so (3) multiple convictions for those "same" offenses violate double-jeopardy principles. We conclude that the court of appeals properly vacated the conviction for the "contact" sexual-assault count, and we affirm its judgment.[2]

I.

Appellant and his wife, Amanda, first met Jessica Parnell (a pseudonym), at a downtown Austin Salvation Army shelter in October of 2010. Amanda and Jessica became friends at the shelter and helped each other with their children. But Jessica was uncomfortable around appellant because he was flirtatious, he kissed her neck, and he "always had a lot of perverted comments." Jessica finally told Amanda that if appellant did not stop hitting on her, they could no longer be friends.

The Aekins family later left the Salvation Army shelter and moved into a house, while Jessica and her children moved to another shelter. Jessica started babysitting the Aekins's two children, based on Amanda's promise that appellant would not be there when she came

---

[1] We granted review of a single ground: "Is the subsumption theory of *Patterson v. State* still valid in light of this court's more recent double jeopardy and lesser-included offense case law?"

[2] *Aekins v. State*, No. 04–13–00064–CR, 2013 WL 5948188, at *3-4 (Tex. App.—San Antonio  Nov. 6, 2013) (not designated for publication).

over.

Amanda asked Jessica if she would babysit her children on February 2, 2012, because Amanda had school and appellant would be out job hunting.  Jessica agreed, and Amanda picked her up early that morning and brought her back to the Aekins's house.

When Amanda and Jessica arrived, appellant was lying in bed with his infant son.  Amanda told Jessica that he was "fixing to get up and get dressed and leave."  Instead, appellant stayed in bed after Amanda left for school.  Jessica was with her two children and the Aekins's oldest child in the front room when appellant called her into the bedroom and asked her to bottle-feed the baby.

Jessica propped herself up against the back of the bed to feed the baby, who was lying next to her with his bottle.  Appellant got up, closed the door, "pushed stuff in front of it," and then came back over to Jessica's side of the bed.  He climbed on top of her and started to take her pants off.  "He was telling me he just wanted to taste me . . . . I was trying to push him off me, but he just kept telling me to feed the baby and it just scared me, like I really didn't know what to do."  Appellant performed oral sex on Jessica against her will, and he also put his fingers inside her vagina against her will.

A few minutes later, Jessica's daughter knocked on the bedroom door, so Jessica got up, got away, left the house, and went next door to a neighbor's home.  She texted Amanda and told her that "she wasn't going to watch the kids anymore because Donald had just sexually assaulted her." Then she called the police.  Appellant, meanwhile, came over to the

neighbor's home and yelled, "[A]in't nobody going to believe you anyway."

Appellant was charged in a three-count indictment:

Count 1:    causing the penetration of Jessica Parnell's female sexual organ by the defendant's finger,

Count 2:    causing the penetration of Jessica Parnell's female sexual organ by the defendant's mouth and/or tongue, and

Count 3:    causing Jessica Parnell's female sexual organ to contact defendant's mouth.

The jury convicted appellant of all three counts–two penetration offenses and one contact offense–and sentenced him to 55 years' imprisonment on each count, to run concurrently.

On appeal, appellant argued that his conviction under Count 3 violated the Double Jeopardy Clause because contacting and penetrating Jessica Parnell's sexual organ with his mouth constituted a single criminal act. The court of appeals agreed. Citing *Patterson v. State*,[3] and *Barnes v. State*,[4] the court concluded that appellant's conviction for sexual assault by contact was barred by double-jeopardy principles because it was based on the same act for which he was convicted of sexual assault by penetration.[5] The court of appeals vacated the trial court's judgment for sexual assault under Count 3.[6]

The correctness of the appellate court's holding depends on the validity of what has

---

[3] 152 S.W.3d 88 (Tex. Crim. App. 2004).

[4] *Barnes v. State*, 165 S.W.3d 75, 88 (Tex. App.—Austin 2005, no pet.) (holding convictions on genital-penetration count and genital-contact count were based on the same act, so conviction on the contact count constituted an unauthorized second conviction for the same offense in violation of the Double Jeopardy Clause).

[5] *Aekins*, 2013 WL 5948188, at *3-4.

[6] *Id.* at *4.

become known as the *Patterson* "incident to and subsumed by" doctrine. We reaffirm this doctrine (which, in some jurisdictions is called "the merger doctrine") and reiterate that it is well grounded in the Fifth Amendment guarantee against double jeopardy.[7]

## II.

The Fifth Amendment provides, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" In *North Carolina v. Pearce*,[8] the Supreme Court stated that the guarantee against double jeopardy consists of three separate constitutional protections: first, it protects against a second prosecution for the same offense after acquittal; second, it protects against a second prosecution for the same offense after conviction; and third, it protects against multiple punishments for the same offense.[9] This case involves a multiple-punishments issue.

A multiple-punishments double-jeopardy violation may arise either in the context of lesser-included offenses (when the same conduct is punished under both a greater and a lesser-included statutory offense) or when the same criminal act is punished under two distinct statutory provisions, but the legislature intended only one punishment.[10]

The first step "in determining the troublesome question of what constitutes the 'same

---

[7] *See Patterson*, 152 S.W.3d at 94 (Hervey, J., concurring) (stating that traditional double-jeopardy analysis barred multiple convictions for indecency by exposure and aggravated sexual assault by penetration when the former was committed as part of the same criminal act as the latter).

[8] 395 U.S. 711 (1969).

[9] *Id.* at 717.

[10] *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

offense'"[11] is to apply the two different *Blockburger*[12] tests. The second test*,* "which focuses upon the statutory language creating the criminal offense," is the better known.[13] Under that second aspect of *Blockburger*,

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.[14]

To decide if conviction on multiple counts stemming from a single criminal act is constitutionally permitted, we compare the elements of the two offenses to determine if each requires proof of an element that the other does not. "If so, the statutory offense is presumably not the same and both offenses generally may be prosecuted."[15]

The first, less famous, *Blockburger* test asks whether each criminal act is a separate and distinct one, separated by time.[16] If the offense is a single *continuous* act, with a single impulse, in which several different statutory provisions are necessarily violated along that

---

[11] 41 GEORGE E. DIX & JOHN M. SCHMOLESKY, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 19.8, at 493 (3d ed. 2011).

[12] *Blockburger v. United States*, 284 U.S. 299 (1932).

[13] DIX & SCHMOLESKY, *supra* note 11, at 493.

[14] *Blockburger*, 284 U.S. at 304.

[15] DIX & SCHMOLESKY, *supra* note 11, at 493.

[16] *Blockburger*, 284 U.S. at 301-02.

continuum, the offenses merge together.  This is variously called "the merger doctrine,"[17]

"the single impulse doctrine,"[18] or, here in Texas, "the doctrine of subsumed acts."[19]  If more

---

[17] *See, e.g., People v. Garcia*, 296 P.3d 285, 293 (Colo. Ct. App. 2012) ("To determine whether a defendant's conduct constituted factually distinct acts, and therefore factually distinct offenses, we examine various factors including whether the acts occurred at different times and were separated by intervening events. Convictions not based on separate offenses merge with one another.") (citation omitted).

[18] *Blockburger*, 284 U.S. at 302-03; *see Hagood v. United States*, 93 A.3d 210, 226 (D.C. 2014) (applying the "fresh impulse" or "fork-in-the-road" test and holding that two counts of possession of a firearm during a crime of violence merged when, although burglary and assault were distinct offenses separated by a ten-minute interval, the convictions arose "out of a defendant's uninterrupted possession of a single weapon during a single act of violence."). *Compare Spain v. United States*, 665 A.2d 658, 660-61 (D.C. 1995) ( applying "fork in the road" test in holding that convictions for taking indecent liberties with a child and assault with intent to commit carnal knowledge convictions did not merge because there were two separate incidents of sexual assault, separated by time; explaining that such greater and lesser offenses "will merge only if they both stem from a single criminal act, or if the lesser is committed in order to effect the greater"), *with Watson v. United States,* 524 A.2d 736, 742 (D.C. 1987) (enticement of a minor merged with sodomy when there was "no evidence of a break in time or any new motive evincing a 'fresh impulse'").  In *Watson*, the court of appeals addressed a situation similar to the present one:

> Sodomy requires proof of penetration, which is not an element of enticing a minor child; enticing requires a specific intent, while sodomy does not.  Because sodomy and enticing a minor are not necessarily "continuous" by nature, the offenses do not merge under the first phase of the *Blockburger* analysis, *i.e.,* there may be instances where a defendant could be convicted of both sodomy and enticing, even when the offenses are part of a single incident.  In the instant case, the enticing and the sodomy were congruent in time and place.  The asportation of the victim to the bedroom was part of the continuous offense here as there was no evidence of a break in time or any new motive evincing a "fresh impulse" having occurred between appellant's pursuit of his victim and the final act of penetration in the victim's bedroom.

*Id.* (citation omitted).  Because the enticing offense was incident to, or part and parcel of, the single, ongoing criminal act of sodomy, and the legislature had not evinced any intention to have that one act punished twice, the two offenses merged.  *Id.* at 743.

[19] *See Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (noting sexual assault statutes encompass "escalation of abuse" and "no matter where in the range the perpetrator stops, the offense is complete at that point"; but nothing in the statutes indicated a legislative intent to permit a "stop action" prosecution in which every motion along the path to penetration may be punished separately; "penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed").

than one statutory offense is necessarily committed by that single criminal act and impulse, then the offenses merge and the defendant may be punished only once. This "single impulse" aspect of *Blockburger* is United States Supreme Court law, not some peculiar doctrine thought up by Texas judges. We are not permitted to ignore or denigrate it. As a lower court, we are bound by Supreme Court reasoning on federal constitutional issues. Although one could argue that this aspect of *Blockburger* is confusing or complicated, other state courts have not found it so.[20] This well-established Supreme Court doctrine is, of course, wholly unrelated to the discredited "carving doctrine" which was properly jettisoned in *Ex parte McWilliams*.[21]

The *Blockburger* facts exemplify the two separate tests. There, a druggist was convicted of three counts of selling morphine improperly to the same buyer.[22] He made one sale on Monday and another sale on Tuesday. The morphine was improperly sold on both days because it was not in its original tax-stamped package,[23] and the morphine sale on

---

[20] *See supra* note 18 and *infra* notes 46-51. Indeed, the bench and bar may find it helpful to refer to some of these out-of-state cases when addressing novel double-jeopardy scenarios, though of course they are not required to do so.

[21] 634 S.W.2d 815, 817 (Tex. Crim. App. 1980).

[22] *Blockburger*, 284 U.S. at 301.

[23] *Id.* (noting the applicable wording of 26 U.S.C. § 692 that required that all opium and other narcotics be sold only "in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section").

Tuesday was also not made pursuant to a written order of the purchaser.[24]  The druggist argued that the morphine sales to the same person on two days constituted a single offense and that the Tuesday sale, which violated two separate statutes–improper packaging and without a written order–was just one act; it was one sale and therefore could be punished only once.  The druggist wanted his three convictions reduced to one.

The Supreme Court upheld all three convictions.  The first *Blockburger* test was whether the two separate morphine sales on two separate occasions to the same customer were two offenses or one.[25]  The Court stated that the distinction between the two  separate sales in this case "and an offense continuous in its character is well settled," noting that "'when the impulse is single, but one indictment lies, no matter how long the action may continue.'"[26]  The Court explained, "In the present case, the first transaction, resulting in a sale, had come to an end.  The next sale was not the result of the original impulse, but of a fresh one–that is to say, of a new bargain."[27]  This was unlike "continuous crimes," which

---

[24] *Id.* (noting the applicable wording of 26 U.S.C. § 696 that required that all such drugs be sold only "in pursuance of a written order of the person to whom such article is sold . . . on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue.").

[25] The Court noted that "[t]he sales charged in the second and third counts, although made to the same person, were distinct and separate sales made at different times."  *Id.*

[26] *Id.* at 302 (quoting "Wharton's Criminal Law (11th Ed.) § 34").

[27] *Id.* at 303.  The Court gave another example of the "fresh impulse" or "separate acts" branch of its double-jeopardy analysis.  It discussed a mailbag-destruction case in which the defendant had ripped into six different locked mail pouches being transported in a railway car with the intent to steal from those bags.  He was convicted of six different counts, one for each bag, and he complained on appeal that double jeopardy barred conviction for more than one offense because he committed just one crime of ripping open the bags at one time and place.  No, said the Supreme

are necessarily committed over a period of time and may involve separate acts that are incidental to, or "part and parcel" of, the single completed offense.[28]

The Supreme Court–applying the second test– then rejected the druggist's argument that the Tuesday sale, which violated two separate statutes, was really one offense. The Court explained that the Narcotics Act was "not aimed at sales of the forbidden drugs qua sales" but at drugs sales in violation of the many regulations governing them, including the tax-stamp regulation and the written-order regulation.[29] Thus, "both sections were violated by the one sale" and the druggist committed two separate offenses at the same instant.

In sum, *Blockburger* addresses *two* multiple-punishment issues: the "continuous action vs. separate and distinct acts" issue and the "one act violates separate distinct statutes"

---

Court, "'it was the intention of the lawmakers to protect each and every mail bag from felonious injury'" and thus each crime was complete when each mail bag was ripped open. *Id.* (citing and quoting *Ebeling v. Morgan*, 237 U.S. 625, 629 (1915)) ("Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged. The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag. . . . The separate counts each charged by its distinctive number the separate bag, and each time one of them was cut there was, as we have said, a separate offense committed against the statute. Congress evidently intended to protect the mail in each sack, and to make an attack thereon in the manner described a distinct and separate offense.").

[28] For example, one rape will frequently involve the defendant's acts of exposing his genitals, then contacting the victim's genitals with his own, then penetrating the victim's genitals with his. It is a "continuing" crime in the sense that the defendant commits several criminal acts on the way to completing the rape, but the lesser acts of exposure and contact merge into the ultimate act of penetration. *Patterson*, 152 S.W.3d at 92. If, on the other hand, the actor rapes the same woman five times during the course of an evening, he, like the defendant in *Eberling*, may be prosecuted for five different aggravated sexual assaults; it is the same crime committed five separate times.

[29] *Blockburger*, 284 U.S. at 303-04.

issue.  But the Supreme Court has said that, for purposes of multiple-punishment analysis, the two *Blockburger* tests are just tools–not the be all, end all, of statutory construction.[30]

Sometimes two offenses that are the "same" *may* both be punished;[31] sometimes two "different" offenses *may not* both be punished.[32]  It all depends on the legislature's intent.[33]

In a line of cases addressing double-jeopardy and jury-unanimity issues in sexual-assault cases, we have concluded that the Texas Legislature's intent is to punish each discrete assault.  Separate criminal acts committed during a single sexual encounter may be punished separately, but a criminal act (such as exposure or contact) that is committed as part of a continuing sexual assault that results in one complete, ultimate act of penetration[34] may not

---

[30] *Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010) (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (Double Jeopardy Clause does no more than prevent the sentencing court from proscribing greater punishment that the legislature intended)).

[31] *See Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (even when crimes have the same elements under the *Blockburger* test, there is no double-jeopardy violation when both are tried in one prosecution and the legislature intended for both offenses to be separately punished); *Garza v. State*, 213 S.W.3d 338, 351-52 (Tex. Crim. App. 2007) (quoting *Hunter*, noting that the *Blockburger* test does not "trump clearly expressed legislative intent," and concluding that convictions for both organized criminal activity and the underlying criminal offense do not violate the Double Jeopardy Clause).

[32] *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008) (holding convictions for felony murder and intoxication manslaughter based on same incident and victims violated double jeopardy despite differences in the statutory elements because the Legislature did not intend to impose multiple punishments for the same offense).

[33] In *Ex parte Ervin*, 991 S.W.2d 804 (Tex. Crim. App. 1999), we set out a non-exclusive list of considerations to help courts determine legislative intent in this context, but the "focus" or "gravamen" of a penal statute is the single "best" indicator in determining whether the legislature intended to define and punish more than one offense.  *Gonzales*, 304 S.W.3d at 848.

[34] *See Patterson v. State*, 152 S.W.3d 88, 91–92 (Tex. Crim. App. 2004) ("The scheme encompasses escalation of abuse; no matter where in the range the perpetrator stops, the offense is

be punished along with that complete, ultimate act. Steps along the way to one rape merge into the completed act.

## A.    Multiple Sexual Acts May Be Punished Separately.

A person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity. The key is that one act ends before another act begins.[35] The defendant might touch a child's breast; then he touches her genitals. Two separate acts, two separate impulses, two separate crimes.

This is true for acts violating not only different statutes,[36] but different subsections of a single statute,[37] and even different discretely prohibited acts within the same subsections.[38]

_____

complete at that point.").

[35] In a pat-your-head-while-rubbing-your-stomach case, one might touch the victim's breast with one hand while simultaneously touching her sexual organ with the other hand. Those are two separate and distinct sexual assaults even though they occur at the same time.

[36] *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999) (noting that, when offenses that are separately defined in different statutes, this "is some indication of legislative intent to authorize multiple prosecutions").

[37] *Id*. at 833 (addressing language of TEX. PENAL CODE § 22.021(a)(1)(B)(i)-(iv) (Aggravated Sexual Assault) prohibiting various penetrations and contacts; holding that the Legislature intended different subsections of the aggravated-sexual-assault statute to constitute separate offenses for purposes of whether an accused may be twice prosecuted or punished for the "same" offense because each subsection "entails different and separate acts to commit the various, prohibited conduct").

[38] *Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010) (addressing language of Aggravated Sexual Assault, prohibiting causing "the penetration of the anus or sexual organ of a child by any means"; "What is true of the various acts specified in the different *subsections* of this nature-of-conduct statute is no less true of the various acts specified within separate and disjunctive *phrases* in the *same* subsection. Either way, such specificity in a conduct-oriented statute ordinarily reflects a legislative intent that each discretely defined act should constitute a discrete offense.

Indecency with a Child, for instance, criminalizes indecency by exposure in one subsection and indecency by contact in another, but two punishments are possible because they require two distinct acts.[39]    Breaking down that statute even further, Indecency with a Child criminalizes three separate contact acts—touching of the (1) anus, (2) breast, or (3) genitals.[40] A person who touches a child's anus, breast, and genitals may be convicted of three offenses. Likewise, Sexual Assault under subsection 22.011(a)(1)(A) criminalizes two separate acts–penetrating by any means (1) the anus, or (2) the sexual organ.    Jury unanimity is required for these distinct acts, but it is *not* required for the different means of committing a single distinct act (e.g., penetrating the anus with the defendant's finger, mouth, or sexual organ).[41]    Thus, for example, the State might charge the defendant with a single count of

Penetration of the anus constitutes a discrete act from penetration of the sexual organ, even if they occur within a short period of time. That both the anus and sexual organ may be anatomically located in the "genital area" does not render the separate acts of penetration the "same" offense for double-jeopardy purposes.") (citations omitted) (emphasis in original).

[39] *Loving v. State*, 401 S.W.3d 642, 646-49 (Tex. Crim. App. 2013) (indecency with a child by exposure and contact, though two subsections of a single statute, are separate and discrete offenses; gravamen of the indecency-with-a-child statute is the nature of the prohibited conduct, regardless of whether the accused is charged with contact or exposure; exposure offense was not subsumed by the contact offense on a trial record that indicated that appellant was masturbating (a complete exposure) before he caused the child victim to touch his penis (a complete contact)).

[40] *Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007) ("the offense of indecency with a child by contact in Section 21.11(a)(1) is a conduct-oriented offense. 'Sexual contact,' as defined in [now 21.11(c)(1) & (2)], criminalizes three separate types of conduct—touching the anus, touching the breast, and touching the genitals with the requisite mental state.  Therefore, each act constitutes a different criminal offense and juror unanimity is required as to the commission of any one of these acts.").

[41] *Cf. Jourdan v. State*, 428 S.W.3d 86, 96 (Tex. Crim. App. 2014) (gravamen of TEX. PENAL CODE  § 22.021(a)(1)(A)(i) (Aggravated Sexual Assault) is penetration; jury was not required to reach unanimity with respect to the means of penetration alleged–penis or his finger–during that

aggravated sexual assault for penetrating a child's sexual organ and allege several different means–penis, finger, mouth, or other object–if there was one sexual assault, but the child is uncertain of what the defendant used to penetrate. What matters is the sexual assault upon the victim, not what the defendant used to commit that discrete assault.

**B.   Acts That Are Subsumed or Merged into the Ultimate Act May Not Be Punished Separately.**

A double-jeopardy violation occurs if one is convicted or punished for two offenses that are the same both in law and in fact. Penetration without exposure is next to impossible. Penetration without contact is impossible. A single sexual act of penile penetration almost always consists of exposing the penis en route to contacting the vagina (or anus or mouth) with the penis, en route to penetration of the same with the penis. That one continuing act, the result of a single impulse, may violate three separate Penal Code provisions, but in *Patterson*, we held that the Legislature intended only one conviction for that one completed sexual assault.[42]  This means that multiple convictions for one complete, ultimate sexual

---

transaction); *Ngo v. State*, 175 S.W.3d 738, 746 & n.27 (Tex. Crim. App. 2005) (unanimity means every juror agrees that the defendant committed the same, single, specific criminal act; jurors are not required to agree upon a single means of commission; "the State could charge Prince Yussupov with the murder of Rasputin, alleging five different manners and means—by poisoning, garroting, shooting, stabbing, or drowning Rasputin. The jury could return a general verdict if it found that Prince Yussupov intentionally caused the death of Rasputin by any of those means; the unanimity requirement goes to the act of 'causing the death of Rasputin,' while the jury need not be unanimous on the preliminary fact issues—whether it was by poisoning, garroting, etc.").

[42] *Patterson*, 152 S.W.3d at 91–92.

assault violate the Double Jeopardy Clause.[43] *Patterson* was not decided on double-jeopardy grounds, but in *Garfias v. State*,[44] we concluded that the result in *Patterson* would be the same under a constitutional analysis, stating

> even if we had decided the constitutional issue, it is clear that the elements of the offenses as charged against the defendant were the same under the *Blockburger* test. Under the cognate-pleadings approach, when the facts necessary to prove one offense are included within the proof necessary to establish another, the offenses are considered the "same" for double-jeopardy purposes, and multiple punishments are barred unless the Legislature has clearly and specifically authorized them. In *Patterson*, the defendant's exposure—proof necessary for the indecency conviction—was included within the proof necessary to establish the aggravated sexual assault by penetration.[45]

The *Patterson* rule is akin to "the merger rule" in other jurisdictions. Some jurisdictions require merger by statute and provide broader protection than the Double Jeopardy Clause. Whatever the source or scope of the rule, it has one root purpose: to prevent Double Jeopardy Clause violations.[46] The merger rule prevents "cumulative punishment of a defendant for the

---

[43] *See id.* at 92-94 (Hervey, J., concurring) (double jeopardy barred multiple convictions for penile exposure as incident to penile penetration for one completed aggravated sexual assault).

[44] 424 S.W.3d 54 (Tex. Crim. App. 2014).

[45] *Id.* at 63 (citations omitted).

[46] *State v. Chesnokov*, 305 P.3d 1103, 1108 (Wash. Ct. App. 2013) (merger doctrine's purpose is to correct violations of the prohibition of double jeopardy); *Commonwealth v. Weatherill*, 24 A.3d 435, 437 n.1 (Pa. Super. Ct. 2011) ("A merger question implicates double jeopardy and relates to the legality of a sentence."); *State v. Ross*, 174 P.3d 628, 635 (Utah 2007) ("Although merger is codified in statute, it has a constitutional pedigree as it provides a means to prevent violations of constitutional double jeopardy protection."); *State v. Diaz*, 677 A.2d 1120, 1124 (N.J. 1996) ("The purpose of merger is to avoid double punishment for a single wrongdoing."); *People v. Henderson*, 810 P.2d 1058, 1060 (Colo.1991) (analysis of whether convictions should be merged must be based on double-jeopardy principles).

same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed."[47]

The merger rule can be stated another way: Where two crimes are such that the one cannot be committed without necessarily committing the other, then they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both.[48] For example, in Georgia, a child molestation based on touching the child's vagina with a hand merged into aggravated sexual battery based on penetrating her vagina with a finger.[49] And in Alaska, second-degree sexual contact that is merely preparatory to, or coincident with, penetration merges with the first degree penetration offense.[50] Conversely, in Massachusetts, an indecent contact that was "separate from and not incidental to the act of penetration did not merge with the crime of rape to constitute but a single offense[.]"[51]

---

[47] *See State v. Roberts*, 705 N.E.2d 247, 250 (Ohio 1980) (discussing statute codifying judicial doctrine of merger).

[48] *Ex parte Pruitt*, 233 S.W.3d 338, 348 (Tex. Crim. App. 2007) ("acts of genital-to-genital contact, which were incidental or 'subsumed' within the alleged incidents of penetration for which appellant was acquitted in the prior trial, are lesser-included offenses of these incidents of penetration" and "will be jeopardy barred."); *see also State v. Ross*, 174 P.3d 628, 641 (Utah 2007) (an underlying felony that constitutes the aggravating circumstance merges with the conviction for aggravated murder; "To allow the attempted murder charge to be used as the sole means of aggravation and as its own separate offense permits double counting of the offense in violation of double jeopardy and the merger doctrine.").

[49] *Castaneda v. State*, 727 S.E.2d 543, 544-45 (Ga. Ct. App. 2012).

[50] *Johnson v. State*, 762 P.2d 493, 495 (Alaska Ct. App. 1988).

[51] *Commonwealth v. Fitzpatrick*, 441 N.E.2d 559, 561 (Mass. 1982); *see also Faulkner v. State*, 109 So.3d 142, 147-48 (Miss. Ct. App. 2013) (convictions for fondling and sexual battery concerned separate events such that offenses did not merge under double-jeopardy principles; noting, on the one hand, that when penetration is achieved by touching, then fondling or molestation is a

In short, in Texas, as in many other jurisdictions, a defendant may not be convicted for a completed sexual assault by penetration and also for conduct (such as exposure or contact) that is demonstrably and inextricably part of that single sexual assault. With these guiding principles in mind, we turn to the double-jeopardy issue in this case.

III.

The offenses in Counts 2 and 3 are the "same" under the law. Applying our cognate-pleadings version of the second *Blockburger* test, the facts necessary to prove the indicted Section 22.011(a)(1)(C) offense (contact of Jessica Parnell's sexual organ by defendant's mouth) are included within the proof necessary to establish the indicted Section 22.011(a)(1)(A) offense (penetration of Jessica Parnell's sexual organ by defendant's mouth). Since the offenses are considered the "same" for double-jeopardy purposes, multiple punishments are barred unless the Legislature has clearly and specifically authorized them. As discussed above, this Court has already determined–by looking at the *Ervin* factors across a multitude of cases–that the Legislature has not manifested an intent to authorize "stop-action" prosecutions (and therefore multiple punishments) for a single complete act of sexual assault.[52]

---

lesser-included offense of sexual battery, but if evidence supports separate and distinct acts of fondling and sexual battery, separate charges do not implicate double jeopardy, even when the criminal acts are closely connected or based on a common nucleus of fact).

[52] Of course, Count One set out a distinct and different act of sexual assault–penetration of Jessica's female sexual organ with the defendant's finger. Suppose that the State had also alleged *contact* of Jessica's sexual organ with the defendant's finger. Two convictions for first contacting on the way to penetrating her sexual organ with his finger as part of a single sexual assault would

The offenses are also the "same" under the first *Blockburger* test. As the court of appeals stated, "The State presented no evidence the contact and penetration of appellant's tongue constituted separate and distinct acts. Rather, Parnell's testimony supports appellant's contention the sexual assault consisted of a single incident that occurred within the span of minutes."[53]

The SPA asks how to determine whether an instance of conduct is a single act or multiple acts. This is an issue other courts have grappled with. In Nevada, the court asks, has there been "a hypertechnical division of what was essentially a single act"?[54] The District of Columbia Court of Appeals has stated,

> As with other Fifth Amendment double jeopardy claims, to determine whether the defendant's conduct was a single act or distinct acts we employ the "fresh impulse" or "fork-in-the-road" test. If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive

---

merge and be double-jeopardy barred. *See Patterson*, 152 S.W.3d at 92 (exposure and contact "subsumed" by penetration; multiple convictions not permitted). It is all one continuous act with a single criminal impulse. But penetrating with his finger may be a separate criminal act (and separate sexual assault) from penetrating with his mouth or penis or some other object.

[53] *Aekins*, 2013 WL 5948188, at *4.

[54] *Townsend v. State*, 734 P.2d 705, 710 (Nev.1987) ("[T]wo sexual assaults did not occur. Townsend simply began lubricating the victim's vaginal area, took his hand away, put more lubricating substance on his finger and then penetrated the child's vagina. Such a hypertechnical division of what was essentially a single act is not sustainable."). *See also State v. Diaz*, 677 A.2d 1120, 1124 (N.J. 1996) (analyzing the evidence in terms of (1) time and place of each purported offense; (2) whether the proof as to one count would be a necessary ingredient to prove another count; (3) whether one act was an integral part of a larger scheme or episode; (4) the intent of the accused; (5) and the punishment for the offenses).

intentions make him subject to cumulative punishment[.][55]

We have used the "fresh impulse" test in the context of drug offenses.  In *Lopez v. State*,[56] we held that an offer to sell drugs and the possession of the drugs to complete that specific sale is one single offense because the steps in this single drug transaction were all "the result of the original impulse," and therefore each step was not a "new bargain."[57]

These tests are simply common-sense propositions that reject  "a sterile literalism which loses sight of the [constitutional] forest for the [statutory] trees."[58]  A complete, ultimate sexual assault is one act, though it may involve other discrete lesser acts (none is a new "fork in the road" or a "fresh impulse") along the way towards its completion.  A rape is one act from beginning to end; an incident of oral sex is one act from beginning to end.

If the victim says Dangerous Dan raped her, then forced oral sex, then raped her again, then forced oral sex again–there are four criminal convictions possible.[59]  All four of those

---

[55] *Hagood v. United States*, 93 A.3d 210, 226 (D.C. 2014) (some internal quotation marks and citations omitted).  This test is rooted in *Blockburger* itself.  *See Blockburger v. United States*, 284 U.S. 299, 301, 303 (1932) (setting out the "fresh impulse" test); *Ebeling v. Morgan*, 237 U.S. 625 (1915).

[56] 108 S.W.3d 293 (Tex. Crim. App. 2003).

[57] *Id.* at 300-01.

[58] *See Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 572 (Tex. 2014) (Willett, J., concurring) ( "Judges must navigate a narrow course 'between a sterile literalism which loses sight of the forest for the trees, and a proper scruple against imputing meanings for which the words give no warrant.' For that reason, '[l]anguage cannot be interpreted apart from context.' Meaning is bound to and bound by context.") (citations omitted).

[59] *See Patterson*, 152 S.W.3d at 92 (two distinct, completed incidents of penile penetration separated by a bathroom break gave rise to two separate punishments).

complete, ultimate acts may have also contained lesser discrete criminal acts along the way toward completion (multiple contacts and multiple discrete acts of penetration per rape), but those merge with the completed, ultimate sexual assault.  On the other hand, an act of masturbation is an exposure complete in itself and a "fresh impulse" from an exposure incident to a contact or penetration.[60]  An indecent contact that is not simply preparatory to an act of penetration is itself a complete, ultimate act–the result of a fresh impulse.  Likewise, separate acts of penetration with different instruments (say, with a sex toy and with a penis[61]) constitute two distinct ultimate acts.  This is why appellant may be punished for the two penetration counts in this case (penetration by finger and penetration by mouth), even though they are proscribed by the same subsection of sexual assault–Texas Penal Code § 22.011(a)(1)(A)–without offending the Double Jeopardy Clause.

We agree with the court of appeals that the jury in this case could not have found two separate acts of the defendant's mouth contacting and penetrating Jessica's sexual organ. Two convictions, based on a hypertechnical division of what was essentially a single continuous act, are barred under the Double Jeopardy Clause.  We affirm the judgment of the court of appeals.

Delivered: October 22, 2014
Publish

---

[60] *Loving v. State*, 401 S.W.3d 642, 646-49 (Tex. Crim. App. 2013) (masturbation exposure was separate act and separate offense from exposure by having child touch defendant's penis; dual convictions did not violate Double Jeopardy Clause).

[61] But if there were only *one* distinct act of sexual assault by penetration, the jury need not be unanimous on whether that act was committed with a sex toy or a penis. *Jourdan v. State*, 428 S.W.3d 86, 96 (Tex. Crim. App. 2014) (noting that "the gravamen of the [Penal Code] subsection is penetration, not the various unspecified 'means' by which that penetration may be perpetrated").