

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00326-CR

_____

RAM CHANDRA RIJAL, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1577251D

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Ram Chandra Rijal was convicted of one count of sexual assault of a child under the age of 17, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. In two issues, Rijal challenges his convictions for counts three (indecency with a child by contact) and four (indecency with a child by exposure) and argues that the trial court's judgment, specifically its Order to Withdraw Funds, should be modified to reflect the correct amount of fines authorized by the judgments of conviction for counts one and two.[1]

We reverse Rijal's convictions for counts three and four and render judgments of acquittal as to those counts, and we modify the trial court's Order to Withdraw Funds to reflect $10,345 in fines and court costs as assessed in Rijal's convictions for counts one and two.

### I. Background

In January 2019, 16-year-old G.M. lived with her grandmother (Grandmother), her 17-year-old aunt (Aunt), her 8-year-old sister (Sister), and Grandmother's boyfriend, Rijal.[2] All five individuals shared a single bedroom and slept on blankets on

---

[1]Rijal does not challenge his convictions for counts one (sexual assault of a child) and two (indecency with a child by contact).

[2]We use aliases to refer to Grandmother, Aunt, and Sister, and we refer to G.M. by her initials. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

the floor. G.M., Aunt, and Sister slept on one side of the room, and Grandmother and Rijal slept on the other side.

On January 5, 2019, Grandmother woke G.M. early in the morning to tell her that she was leaving for work, as she usually did. After Grandmother left, G.M. laid down next to Aunt and Sister and went back to sleep. G.M. later woke to Rijal pulling her toward him and away from Aunt and Sister, who were still asleep. Rijal put a blanket over himself and G.M. and tried to get her to touch his penis, but she told him no. Rijal grabbed G.M.'s hand, lifted up his underwear, and put her hand on his "hard" penis, forcing her to move her hand up and down. He then grabbed her hair and forced her head down until his penis was in her mouth and she could feel his pubic hair. Rijal held G.M. by her hair and forced her to perform oral sex on him for five to ten minutes until he ejaculated in her mouth, and then he released her hair. When it was over, G.M. ran to the bathroom, locked the door, grabbed a tissue, and spit out "whatever was in [her] mouth."

After she disposed of the tissue, G.M. went back to the bedroom and woke Aunt to tell her what had happened. Trying to be quiet, she typed the message "RC [Rijal] just made me suck his penis" into her cell phone and showed Aunt. G.M. and Aunt then left the room to call Grandmother; Aunt told Grandmother what had happened and asked her to return home. When Grandmother returned, G.M. told her what Rijal had done to her and stated that she wanted to go to the police. They went

3

to the police that morning, and G.M. was later seen by a sexual assault nurse examiner (SANE) and by a forensic interviewer.

The police later interviewed Rijal about G.M.'s allegations against him, and when they asked him why they would have found his DNA on G.M., he stated that he had been asleep and that he had woken to G.M.'s hand on his penis and his shorts pulled partly down. But then, he explained that he had woken to feeling someone's mouth on his penis but that he had not opened his eyes to see who it was. At his trial, Rijal testified that the statements he had made to the police were lies and that he had lied because he was confused and angered by the questioning and because he was "stupid."

Rijal was indicted for (1) sexual assault of a child under the age of 17, based on his alleged act of penetrating G.M.'s mouth with his penis; (2) indecency with a child by contact, based on his alleged act of forcing G.M. to touch his penis with her hand; (3) indecency with a child by contact, based on his alleged act of touching G.M.'s body, including through her clothing, with his penis; and (4) indecency with a child by exposure, based on his alleged act of exposing his penis while "a child younger than 17 years of age was present." Following his trial, a jury found Rijal guilty on all four counts and assessed his punishments. The trial court entered its judgments of conviction on the jury's verdicts and ordered the sentences to run concurrently. This appeal followed.

## II. Sufficiency of the Evidence

Rijal concedes that the evidence supports his convictions on counts one and two. He contends that his convictions on counts three and four, however, should be vacated because "no evidence" supports these convictions. Alternatively, Rijal argues that the conduct alleged in counts three and four is the same or part of the same conduct alleged in counts one and two and that counts three and four are therefore subsumed in counts one and two.[3]

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*,

---

[3]Rijal appears to raise a double-jeopardy challenge in the alternative. *See Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014).

5

622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

**B. Count Three**

Count three alleged that Rijal committed the offense of indecency with a child by contact. A person commits the offense of indecency with a child by contact as alleged in count three if he "engages in sexual contact with the child or causes the child to engage in sexual contact." Tex. Penal Code Ann. § 21.11(a)(1). Under this section, "sexual contact" occurs if the person, acting "with the intent to arouse or gratify the sexual desire of any person," touches "any part of the body of a child, including touching through clothing, with . . . any part of the genitals of [the] person." *Id.* § 21.11(c)(2).

6

Even viewing all the evidence in the light most favorable to the verdict, nothing in the record before us establishes that—apart from the undisputed sexual contact described in counts one and two—Rijal touched any part of G.M.'s body with his genitals as alleged in count three of the indictment. The State points to the evidence supporting Rijal's convictions on counts one and two—which Rijal does not challenge—and then argues that "the other evidence at trial" shows that he touched G.M.'s body with his genitals in ways *not* described by counts one and two. By "other evidence," the State relies solely on the SANE's testimony about what G.M. had told her during the SANE exam:

> [Rijal] grabbed my hand and made me touch it [his penis]. He grabbed my head and put his [penis] in my mouth. . . .
>
> *Then he said, "this is going to happen every day." He tried to get on top of me. He tried to do something to me.* I tried to get away. I went to the bathroom and locked the door and called my aunt.

[Emphasis added.] According to the State, the jury could infer from this testimony alone that after Rijal ejaculated in G.M.'s mouth "with his bare penis," he tried to climb on top of her to do something to her and, consequently, his penis touched her body. But this narrative, if true, is vague and suggests only that Rijal tried to get on top of her and tried to do something to her but that she was able to go to the bathroom and lock the door. It does not contain any actionable conduct or otherwise explain how Rijal's trying to get on top of her or trying to do "something" amounted

7

to sexual contact. *See id.* G.M. did not describe to the SANE what she meant by "something" nor did she or anyone else testify to this narrative at trial.[4]

Further, there is nothing in this narrative indicating that Rijal's penis was still exposed after he "finished" or that his "bare penis" subsequently touched G.M. The State asserts that "at one point, [Rijal's] shorts were pulled down," but the only evidence in support of this is Rijal's statement to police that he had woken to G.M.'s hand on his penis and to his shorts pulled partly down. At trial, Rijal testified that he had lied to the police and that G.M. had never touched his penis. While he no longer disputes whether he forced G.M. to touch his penis, nothing in the record before us establishes the extent of his exposure, whether his shorts were pulled down or just "lifted up" (as G.M. testified), or whether, after he ejaculated, he was still exposed in a manner that could have facilitated contact with his penis when he "tried to get on top of [G.M.]."

The SANE's testimony about G.M.'s narrative was too imprecise for the jury to have reasonably inferred that Rijal touched G.M. with his penis apart from the undisputed sexual contact described in counts one and two. *See Bridgefarmer v. State*, No. 02-19-00425-CR, 2020 WL 7258059, at *7 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.) (mem. op., not designated for publication); *Cosio v. State*, 318 S.W.3d

---

[4]When asked whether Rijal had "indicate[d] to [her] immediately after [the sexual assault] happened that [it] would be a frequent occurrence from now on," G.M. answered, "No, sir." She testified that when Rijal "finished," he "let [her] go" and she ran to the bathroom.

917, 921 (Tex. App.—Corpus Christi–Edinburg 2010) (en banc) (op. on reh'g), *rev'd on other grounds*, 353 S.W.3d 766 (Tex. Crim. App. 2011). Without more, the evidence falls short of meeting the crime's essential elements beyond a reasonable doubt.

We hold that the evidence is insufficient to support Rijal's conviction for indecency with a child by contact as alleged in count three. Accordingly, we reverse the trial court's judgment and render a judgment of acquittal on that count. *See* Tex. R. App. P. 43.2(c); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S. Ct. 2151, 2154–55 (1978); *Burks v. United States*, 437 U.S. 1, 16–18, 98 S. Ct. 2141, 2150–51 (1978); *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013).

## C. Count Four

Count four alleged that Rijal committed the offense of indecency with a child by exposure.[5] A person commits the offense of indecency with a child by exposure as alleged in count four if he, "with intent to arouse or gratify the sexual desire of any person[,] . . . exposes . . . any part of the person's genitals, knowing the child is present." Tex. Penal Code Ann. § 21.11(a)(2)(A). "[T]he gravamen of the offense of indecency with a child by exposure is the act of exposure." *Harris v. State*, 359 S.W.3d 625, 632 (Tex. Crim. App. 2011).

---

[5]Contrary to Rijal's argument on appeal—and the State's closing argument at trial—count four in the indictment (and in the jury charge) did not specifically allege that Rijal had exposed himself to G.M. Rather, count four alleged that Rijal had exposed himself to "a child younger than 17 years of age."

9

The State argues that the evidence is sufficient to support Rijal's conviction on count four because it shows that he "expos[ed] his bare penis before forcing G.M.'s mouth and hand on his penis while [Sister], age 8, and [Aunt], age 17, were still asleep in the same room." In support of its argument, the State cites *Harris* for the contention that the offense of indecency with a child by exposure requires only that the child be "present" for the offense. *Id.* at 631. Indeed, "the child does not even have to be aware of the exposure." *Id.* As the Court of Criminal Appeals explained,

> [T]he offense of indecency with a child by exposure is complete once the defendant unlawfully exposes himself in the required circumstances. In *Ex parte Amador*, [326 S.W.3d 202 (Tex. Crim. App. 2010),] we established that indecency with a child by exposure does not depend upon the child suffering any harm from seeing the defendant's genitals. *Amador*, 326 S.W.3d at 207, 208. "[I]t is the society that is 'offended or alarmed' by the fact that its children should be subjected to such exposure." *Id.* at 208. . . . "The offense is based on the defendant's actions and mental state, not the other person's comprehension." *See id.* at 209 (Cochran, J., concurring) (citing *Uribe v. State*, 7 S.W.3d 294, 297 (Tex. App.—Austin 1999, pet. ref'd) (upholding a conviction for indecency with a child by exposure even though the child did not see the defendant's genitals)). Accordingly, the forbidden conduct of Section 21.11(a)(2)(A) is the exposure of the defendant's anus or genitals under the proscribed circumstances. As such, this factor suggests that the act of exposure is the unit of prosecution.

*Id.* (footnote omitted).

Rijal's conviction on count four does not depend on whether Aunt and Sister saw his penis or were even aware of the exposure. *See id.* The evidence that Aunt and Sister were asleep at the time of the exposure or that Rijal had put a blanket over himself and G.M. does not go to the gravamen of the offense. *See id.* at 632; *see also*

*Amador*, 326 S.W.3d at 209 (Cochran, J., concurring) (stating child or children "may be asleep, blind, reading a book, looking at the clouds in the sky, or whatever"); *Vidaurri v. State*, No. 11-14-00291-CR, 2016 WL 6652785, at \*2 (Tex. App.—Eastland Oct. 31, 2016, pet. ref'd) (mem. op., not designated for publication) (affirming indecency-by-exposure conviction under Section 21.11(a)(2)(B) where appellant exposed child's anus while child was asleep); *cf. Skillern v. Arkansas*, No. CR-23-604, 2024 WL 2838219, at \*2, \*5 (Ark. Ct. App. June 5, 2024) (affirming conviction for Arkansas's offense of indecency with a child by exposure where infant child was likely asleep).

Our analysis does not end there, though, because Rijal exposed himself not only to Aunt and Sister but also to G.M. Again, the gravamen of the offense of indecency with a child by exposure is the act of exposure; "[t]he allowable unit of prosecution for the offense is the act of exposure." *Harris*, 359 S.W.3d at 632. Rijal "committed only one offense under Section 21.11(a)(2)(A) when he exposed himself to three children at the same time." *See id.* In other words, Rijal's conduct in exposing his penis to Aunt and Sister cannot be separated from or tried independently of his conduct in exposing his penis to G.M. *See id.* This implicates Rijal's double-jeopardy challenge. *See supra* note 1.

Appellant did not raise double-jeopardy complaints in the trial court. Thus, he has forfeited them unless "the undisputed facts show the double jeopardy violation[s are] clearly apparent on the face of the record and . . . enforcement of [the] usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d

11

640, 643 (Tex. Crim. App. 2000); *see Langs v. State*, 183 S.W.3d 680, 686–87 (Tex. Crim. App. 2006). A double-jeopardy claim is apparent on the face of the trial record if resolving the claim does not require further proceedings to introduce additional evidence supporting the claim. *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Gonzalez*, 8 S.W.3d at 643. We thus examine the record to determine if it shows a double-jeopardy violation on its face.

Rijal contends that the conduct alleged in count four (exposure) was subsumed by his conduct in counts one (penetration) and two (contact). A multiple-punishments double-jeopardy violation may arise in two situations: (1) the lesser-included-offense context, when the same conduct is punished twice; and (2) when multiple punishments are imposed for the same criminal act under two distinct statutes when the legislature intended that the conduct be punished only once. *Langs*, 183 S.W.3d at 685. The ultimate question is whether the legislature intended to allow for multiple punishments. *Id.* at 688. In the subsumption context, the legislature intended for only one punishment. *See Aekins*, 447 S.W.3d at 272 ("[W]hen a single exposure or contact offense is 'incident to and subsumed by' a penetration offense, the offenses are the 'same' for double-jeopardy purposes.").

"Penetration without exposure is next to impossible." *Id.* at 279. "A single sexual act of penile penetration almost always consists of exposing the penis en route to contacting the . . . mouth[] with the penis, en route to penetration of the same with the penis." *Id.* While this one continuing act may constitute three separate offenses

12

(exposure, contact, and penetration), "the [l]egislature intended only one conviction for that one completed sexual assault." *Id.* Therefore, multiple convictions for one sexual assault violate the Double Jeopardy Clause. *Id.*

Here, the offense in count four is the "same" as the offenses in counts one and two. The only evidence of Rijal's exposing his penis to G.M.—and consequently, to Aunt and Sister, *see Harris*, 359 S.W.3d at 632—was when he forced G.M. to put his penis in her mouth (penetration) and when he forced G.M. to touch his penis with her hand (contact). These two acts can support only two convictions, respectively: that of the sexual assault of a child as alleged in count one and that of the indecency with a child by contact as alleged in count two. *See Aekins*, 447 S.W.3d at 281, 283. Thus, the exposure offense in count four was incident to and subsumed by the offenses in counts one and two. *See id.* at 272.

We conclude that the record shows a double-jeopardy violation on its face as to count four. *See Gonzalez*, 8 S.W.3d at 643. Accordingly, we reverse the trial court's judgment and render a judgment of acquittal on that count. *See* Tex. R. App. P. 43.2(c).

### III. Concurrent Fines

Rijal contends that the trial court's Order to Withdraw Funds should be modified because the order directs withdrawal of four times the amount of fines authorized by the judgments of conviction. The State agrees.

A fine is punitive in nature and is part of a defendant's sentence. *Anastassov v. State*, 664 S.W.3d 815, 820 (Tex. Crim. App. 2022). In prosecutions involving multiple offenses from the same criminal episode, a defendant who is found guilty must receive a distinct sentence for each offense. *Id.* at 821 (citing Tex. Penal Code Ann. § 3.03(a)). Depending on the offense types, the trial court may order that the sentences run concurrently or consecutively. *See* Tex. Penal Code Ann. § 3.03(a), (b). When multiple fines are assessed against a defendant in a same-criminal-episode prosecution and are ordered to be discharged concurrently, they discharge in the same manner as multiple concurrent terms of confinement, i.e., the defendant pays the highest amount of fine but receives credit for satisfying each concurrent fine. *Anastassov*, 664 S.W.3d at 822.

Here, the jury assessed a term of confinement and a $10,000 fine for each count. The trial court sentenced Rijal accordingly and ordered the four sentences to run concurrently, which is reflected in the judgments. In its Order to Withdraw Funds, the trial court combined the fines, ordering the Texas Department of Criminal Justice to withdraw and remit $40,345 in fines and court costs.[6] But because the trial court ordered Rijal's sentences to run concurrently, the Order to Withdraw Funds should reflect a $10,000 fine. We therefore sustain Rijal's second issue and modify the judgments on counts one and two, specifically the Order to Withdraw Funds, to

---

[6]This includes $345 in court costs, which Rijal does not dispute.

14

reflect fines and court costs in the amount of $10,345. *See* Tex. R. App. P. 43.2(b) (permitting court of appeals to modify trial court's judgment).

## IV. Conclusion

We reverse Rijal's convictions and render judgments of acquittal on counts three and four only. We modify the trial court's Order to Withdraw Funds to reflect $10,345 in fines and court costs and affirm the judgments on counts one and two as modified.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 8, 2024