ACCEPTED
14-14-00816-CR
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
2/13/2015 1:02:28 PM
CHRISTOPHER PRIN
CLERK

## NO. 14-14-00816-CR

## IN THE COURT OF APPEALS

## FOURTEENTH DISTRICT

## HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

2/13/2015 1:02:28 PM

CHRISTOPHER A. PRINE
Clerk

## NO. 1381491

## IN THE TRIAL COURT

## 262ND JUDICIAL DISTRICT

## HARRIS COUNTY, TEXAS

| | | |
|---|---|---|
| **JESSE RALPH DAINS** | § | **APPELLANT** |
| **VS.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

## BRIEF FOR APPELLANT

**ALLEN C. ISBELL**
**202 Travis, Suite 208**
**Houston, Texas 77002**
**713/236-1000**
**Fax: 713/236-1809**
**STATE BAR NO. 10431500**

**COUNSEL ON APPEAL**

# NAMES AND ADDRESSES OF ALL PARTIES
# AT THE TRIAL COURT'S FINAL JUDGMENT

Trial Judge

     Honorable Denise Bradley, Judge Presiding
     262nd District Court
     1201 Franklin, 15th Fl., Houston, Texas 77002

Appellant/Defendant

     Mr. Jesse Ralph Dains
     #01958039
     Stiles Unit
     3060 FM 3514, Beaumont, Texas 77705

Appellant's Counsel

     Mr. Allen C. Isbell - Counsel on Appeal
     202 Travis, Suite 208, Houston, Texas 77002

     Mr. Victor Wisner - Counsel at Trial
     8431 Katy Fwy., Suite 101, Houston, Texas 77024

Attorneys for the State of Texas

     Mr. Alan Curry - Assistant District Attorney on Appeal
     1201 Franklin, Ste. 600, Houston, Texas 77002

     Ms. Jamie Burro - Assistant District Attorney at Trial
     Ms. Jamie Morrisson - Assistant District Attorney at Trial
     1201 Franklin, 6th Fl., Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

Names and Addresses of All Parties at the Trial Court's Final Judgment
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of the Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . 1

**Point of Error Number One**
**APPELLANT SUFFERED EGREGIOUS HARM BY THE TRIAL COURT'S FAILURE TO DEFINE PROPERLY "INTENTIONALLY AND "KNOWINGLY" AS APPLIED TO APPELLANT'S ALLEGED CONDUCT BECAUSE APPELLANT'S DEFENSE AT TRIAL WAS THAT HE "BLACKED OUT," WHICH RAISED THE ISSUE OF WHETHER HE ACTED WITH THE REQUIRED CULPABLE MENTAL STATE WITH REGARD TO HIS ALLEGED CONDUCT.** . . . . . . . . . 1

Statement of Facts Point of Error Number One . . . . . . . . . . . . . . . . 2

Summary of the Argument Point of Error Number One . . . . . . . . . . 10

Argument and Authorities Point of Error Number One . . . . . . . . . . 11

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Aekins v. State,* 447 S.W.3d 270, 286-287 (Tex. Crim. App. 2014) . . . . . 12

*Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim .App. 1985) . . . . . . . 13

*Garza v. State*, 794 S.W.2d 497, 500 (Tex. App. Corpus Christi 1990, pet.ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gonzales v. State,* 304 S.W.3d 838, 848 (Tex. Crim. App. 2010) . . . . . 12

*Huffman v. State,* 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) . . . . . . . 12

*Mendenhall v. State,* 77 S.W.3d 815, 818 (Tex. Crim. App. 2002) . . . 11-12

*Patrick v. State,* 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) . . . . . . . 13

*Reed v. State,* 421 S.W.3d 24, 29-30 (Tex. App. Waco 2013, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Skillern v. State,* 890 S.W.2d 849, 869 (Tex. App. Austin 1994, pet.ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stuhler v. State,* 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) . . . . . . . 13

*Vick v. State,* 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) . . . . . . . . . 12

**STATUTES**

*Texas Code of Criminal Procedure,* Art. 36.14 . . . . . . . . . . . . . . . . . . . . 12

*Texas Penal Code,* Sec. 6.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is waived.

**TO THE HONORABLE COURT OF APPEALS:**

COMES NOW JESSE RALPH DAINS, appellant, by and through his appointed/retained attorney of record, ALLEN C. ISBELL, and files this Brief in support of his prayer for reversal of his conviction.

## Statement of the Nature of the Case

This is an appeal arising from a conviction for Aggravated Sexual Assault in the 262nd District Court of Harris County, Texas, the Honorable Denise Bradley, Judge Presiding. The jury found appellant guilty. The judge/jury sentenced appellant to twenty-five (25) years imprisonment, in the Texas Department of Criminal Justice, Institutional Division and assessed a $10,000 fine. No Motion for New Trial was filed. Appellant gave written Notice of Appeal on September 30, 2014.

## Point of Error Number One

**APPELLANT SUFFERED EGREGIOUS HARM BY THE TRIAL COURT'S FAILURE TO DEFINE PROPERLY "INTENTIONALLY AND "KNOWINGLY" AS APPLIED TO APPELLANT'S ALLEGED CONDUCT BECAUSE APPELLANT'S DEFENSE AT TRIAL WAS THAT HE "BLACKED OUT," WHICH RAISED THE ISSUE OF WHETHER HE ACTED WITH THE REQUIRED CULPABLE MENTAL STATE WITH REGARD TO HIS**

**ALLEGED CONDUCT.**

**Statement of Facts**
**Point of Error Number One**

The Indictment charged that appellant committed the offense of

Aggravated Sexual Assault:

> "The duly organized Grand Jury of Harris County, Texas, presents
> in the District Court of Harris County, Texas, that in Harris County,
> Texas, **JESSE RALPH DAINS**, hereafter styled the Defendant,
> heretofore, on or about **MARCH 21, 2013,** did then and there
> unlawfully, intentionally and knowingly cause the penetration of
> the mouth of KELLY LACKEY, hereinafter called the Complainant,
> by the sexual organ of the Defendant, without the consent of the
> Complainant, namely, the Defendant compelled the Complainant
> to submit and participate by the use of physical force and
> violence, and in the course of the same criminal episode, the
> Defendant used and exhibited a deadly weapon, namely a KNIFE"
> (C.R. I, 13).

The complaining witness, Kelly Lackey, began working as a bartender

at the B & H Bar in Tomball, Harris County, Texas, in January of 2013.  The

small bar has a regular clientele from the community.  It served beer and

wine, but allowed patrons to bring in their own liquor and to purchase ice,

Sprite or Coke.  She had seen the appellant, Jesse Ralph Dains, in the bar

about five times between January and the date of the alleged offense. The

first time that he came in, appellant asked her to dinner but she declined

(R.R.3, 126-129).  On the day of the alleged assault, she arrived at the bar at

5 p.m. for the evening shift, which usually ended at 10 p.m. It was very busy that evening. Therefore, she did not recall when appellant arrived. When she did see him, he did not appear overly intoxicated. Sometime before 9 p.m., the electrical lines to the building were cut by some unknown person or persons outside of the bar. When the lights went out, most people began to leave. She, a man named Jesse Martin, and appellant were the last ones inside the bar (R.R. 3, 131-132).

Jesse Martin was "a regular" who came in with his girlfriend, Sonia, usually. Their custom was to have a drink with the complainant and wait inside the bar while the complainant finished closing up. However, Sonia was ill. So, Jesse Martin had a drink with her and appellant and then left before Sonia had closed (R.R. 3, 133-134). After saying goodnight to Jesse Martin at the outside door, she found appellant standing at the bar near where she kept her cell phone. Immediately, appellant grabbed her and tried to kiss her. She pushed him away. Appellant threw her to the ground, got on top of her, held a knife to her side and told her that he wanted to fuck her. He said that he knew that this was the only way it could happen. She started to scream for help, but appellant pulled her up and began dragging her toward the woman's restroom. She began to fight appellant over the knife. She reached for her

cell phone as they went by the bar, but it was missing (R.R. 3, 134-138).

Once they were inside the restroom, she began to wrestle with appellant. Again, he pushed her to the floor. He held a knife to her throat and said, "Welcome to your funeral." Then, he demanded that she remove her underwear. The complainant claimed that appellant forced her to perform oral sex on him for about six hours. Appellant told her that he wanted to ejaculate in her mouth as he cut her throat, but was unable to obtain an erection. Appellant beat her head against the sink, the toilet bowl and the wall any time she tried to fight back. When she told appellant that she was going to be sick, he held her head over the toilet. In doing so, he took the knife away from her throat. She grabbed the lid from the toilet tank and hit appellant in the head with it. Although injured, appellant said that she was clever but not clever enough. She was bleeding profusely, but appellant blocked the doorway and told her she could just bleed out. However, he realized that some of the blood in the room was his own, he ordered her to clean up the bathroom. She sat on the floor, holding a lighter in one hand so she could see to mop with the other hand. Appellant stood behind her the entire time holding a knife to her throat. When she had finished, appellant gathered the towels and told her that he was taking her to his hotel. He forced her at knife point to drive her

truck to the hotel next door (R.R. 3, 140-148).

Appellant kept the knife in her side and put his arm around her as they walked through the lobby to his room to shield her from the view of the desk clerk (R.R. 3, 149). The desk clerk, Satisbhai Patel, saw appellant come into the hotel with a female at about 4:30 a.m. (R.R. 3, 18-20). When they reached his hotel room, appellant ordered her to take a shower to wash off all of the blood. After she had showered, appellant ordered her to lie on the bed where he performed oral sex on her without her consent. When she asked if she could just rest a bit, appellant cleaned his knife and laid down beside her, and appeared to fall asleep. However, when she sat up, he grabbed her by the back of the head. She said that she just needed to use the bathroom. She stayed in the bathroom until she was sure that appellant was asleep or passed out. Then, she wrapped herself in a towel and ran to the lobby where she asked the clerk to call 9-1-1 (R.R. 3, 21-22, 149-151). The complainant testified that appellant did not slur his words or appear to be overly intoxicated during the assault; that he was eerily calm, and calculating throughout the assault (R.R. 3, 142, 145, 149). His demeanor was so chilling that she got the impression he may have done this before (R.R. 3, 162-163).

Sergeant Jason Welch of the Tomball Police Department responded to the 9-1-1 call. He spoke with the complainant before an ambulance was called to take her to the hospital (R.R. 3, 27-30). Lori Cummings, the emergency and forensic nurse who examined the complaint and prepared a rape kit, described the numerous cuts, bruises and abrasions she observed (R.R. 4, 7-18). Sergeant Welch found appellant in bed, and informed him of the accusations the complainant had made against him. Appellant said that he did not know what happened. Appellant smelled of alcohol and he was taken to the hospital for treatment of a head wound (R.R. 3, 31-33). Detective Albert Chambers secured the hotel and bar as crime scenes and took possession of the complainant's truck. He obtained search warrants for the crime scenes and vehicle, and a warrant for buccal swabs from appellant for DNA comparison (R.R. 3, 48-54). Officer Jason Smith collected the swabs from appellant at the jail (R.R. 3, 64).

The complainant's cell phone was recovered from appellant's hotel room (R.R. 3, 159). Officers Jennifer Torres, Janet Barcelona, and Angela Fagg collected evidence from the hotel, bar and vehicle (R.R. 3, 68-89; 96-106; 116-119). DNA analyst Zury Phillips analyzed the swabs submitted in this case. Swabs from the rape kit contained a mixture of DNA from two sources.

Neither the complainant nor appellant could be excluded (R.R. 4, 25-26). The same was true for samples taken from bloodstains on a shirt (R.R. 4, 28-29), a belt (R.R. 4, 32), and the handle of a knife found in appellant's hotel room (R.R. 4, 33-34). Appellant could not be excluded as a possible major contributor for the blood found on the toilet bowl lid and door handle to the bathroom in the bar (R.R. 4, 34-37). Appellant, but not the complainant, was excluded as a possible source for the blood found on the pair of jeans (R.R. 4, 31), and on the blade of the knife (R.R. 4, 33-34) recovered from appellant's hotel room.

Appellant testified on his own behalf at the guilt-innocence phase of trial. He stayed at the same hotel in Tomball when he came to Texas on business (R.R. 4, 56). He considered himself to be a "functioning alcoholic." (R.R. 4, 54-55, 69). On the morning of March 20, 2013, he flew into Houston from Newark, New Jersey, to set up displays at the Home and Garden Show (R.R. 4, 51, 62). He drank Crown Royal from his flask while he was in the cab going to the airport. He had a couple of drinks while he waited for his flight. He drank on the plane, had a couple of shots at the Houston airport, and drank from his flask in the cab on his way to the hotel. After arriving at the hotel he walked to a nearby liquor store and purchased a half-gallon bottle of

Crown Royal (R.R. 4, 57-58). He always carried a knife as a tool for cutting open boxes and tearing down displays at trade shows. He had put his knife in his pocket out of habit when he unpacked his things at the hotel (R.R. 4, 60, 62, 71).

He went to the B & H Bar about 5 p.m. He remembered that it was unusually crowded that night, that the lights went out, that no one could find out why, and that he and the complaint and another man had one or more drinks after everyone else had left. But, he could remember nothing after that. He blacked out and did not recall anything else until he woke up in his bed to find police officers pointing guns at him (R.R. 4, 62-65, 72-74 ). He testified that he never intended to assault the complainant, and that he had never in his life intentionally wanted to hurt or do anybody any harm (R.R. 4, 59, 66 - 67). He had never blacked out from drinking too much (R.R. 4, 74), and he had no explanation for anything that the complainant said that he had done (R.R. 4, 66).

In his opening statement and in his summation at the close of the trial, appellant's counsel expressed the hope of obtaining a jury charge on the lesser included offense of sexual assault based on whether a deadly weapon was used or exhibited. Then, he planned to argue that appellant was guilty

only of the lesser included offense (R.R. 4, 15-16, 86).  He did not obtain the

anticipated lesser-included charge because the use of a deadly weapon was

not a contested issue (R.R. 4, 84).

Appellant testified that he "blacked out" after consuming a large amount

of alcohol, and that he did not remember any of the conduct alleged in the

indictment (R.R. 4, 64-65, 73-75).  This testimony raised the only contested

issue at trial, that is, appellant's lack of *mens rea* with regard to the alleged

conduct.

The trial court's jury instructions defining intentionally and knowingly

apply only to a "result-of-conduct" type of offense:

> "A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of March, 2013, in Harris County, Texas, the defendant, Jesse Ralph Dains, did then and there unlawfully, intentionally or knowingly cause the penetration of the mouth of Kelly Lackey by the sexual organ of the defendant, without the consent of Kelly Lackey, namely, the defendant compelled Kelly Lackey to submit or participate by the use of physical force or violence, and in the course of the same criminal episode the defendant used or exhibited a deadly weapon, namely a knife, then you will find the defendant guilty of

aggravated sexual assault as charged in the indictment" (C.R.I, 71-72).

Appellant's counsel did not object to the jury charge because it gave a definition of intentionally and knowingly which did not apply to a "nature-of-conduct" type offense. He did not object to the jury charge because it failed to define intentionally or knowingly as applied to a "nature-of-conduct" type offense.

## Summary of the Argument
## Point of Error Number One

Appellant's testimony raised the defense that he did not intentionally or knowingly do the acts alleged in the indictment because he drank so much alcohol that he blacked out and that he had no memory of what he may have done. Appellant's counsel appears not to have recognized that this testimony raised a defense to the offense charged because it negates the *mens rea* necessary for a conviction. Appellant's counsel appears not to have realized that aggravated sexual assault is a "nature of the conduct" type of offense. Appellant's counsel did not object to the trial court's jury instructions defining "intentionally" and "knowingly" on the grounds that those definitions apply only to a "result of the conduct" type of offense. The jury charge does not contain an appropriate definition of intentionally and knowingly as the apply to a

"nature of the conduct" type of offense.  The jury instruction misled the jury's deliberations regarding the *mens rea* of the offense.  Appellant suffered egregious harm by the erroneous jury instruction.

### Argument and Authorities
### Point of Error Number One

*Texas Penal Code,* Sec. 6.03, **Definitions of Culpable Mental States**, provides, in pertinent part, that;

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or the result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Appellant's testimony raised the defense that he did not have a conscious desire to engage in the alleged conduct, and that he was not aware of the nature of his conduct.  He testified that he "blacked out" after consuming a large amount of alcohol, and that he did not remember any of the conduct alleged in the indictment (R.R. 4, 64-65, 73-75).  Persons who are unconscious or semi-conscious at the time of the alleged act may argue that they lacked the *mens rea* necessary for the criminal liability. *Mendenhall v.*

*State,* 77 S.W.3d 815, 818 (Tex. Crim. App. 2002)*.*

Trial counsel did not argue this defense during his summation to the jury at the guilt-innocence stage of trial. Possibly, trial counsel was still fixated on wanting the evidence to raise the lesser-included offense of "sexual assault," that he failed to appreciate that appellant's testimony raised a viable defense, as the Court of Criminal Appeals pointed out in *Mendenhall v. State.* The only contested issue at trial was the issue of appellant's *mens rea* with regard to the alleged conduct.

The Texas Court of Criminal Appeals has determined that the offense of aggravated sexual assault is a "nature-of-conduct" type of offense. See: *Vick v. State,* 991 S.W.2d 830, 833 (Tex. Crim. App. 1999); *Huffman v. State,* 267 S.W.3d 902, 906 (Tex. Crim. App. 2008); *Gonzales v. State,* 304 S.W.3d 838, 848 (Tex. Crim. App. 2010); *Aekins v. State,* 447 S.W.3d 270, 286-287 (Tex. Crim. App. 2014).

*Texas Code of Criminal Procedure,* Art. 36.14 requires that the trial court provide to the jury "a written charge distinctly setting forth the law applicable to the case." The jury charge should contain only that portion of the statutory definition corresponding to the culpable mental state proscribed by the offense. *Garza v. State*, 794 S.W.2d 497, 500 (Tex. App. Corpus

Christi 1990, pet. ref'd). The type of offense charged will dictate which portions of the culpable mental state definition should be submitted. *Skillern v. State,* 890 S.W.2d 849, 869 (Tex. App. Austin 1994, pet. ref'd). A trial court errs in failing to limit the definitions to the conduct elements or elements to which they apply. *Patrick v. State,* 906 S.W.2d 481, 492 (Tex. Crim. App. 1995). In this case the trial court included in the jury charge the statutory definitions of intentionally and knowingly as applied to a "result-of-conduct" type offense, and wholly failed to include instructions relating to a "nature-of-conduct" type offense.

Trial counsel did not object to the jury charge, neither did he request a correct definition for "intentionally" and "knowingly" as applied to a "nature of conduct" offense. Therefore, appellant must show that he suffered egregious harm by the erroneous jury instruction. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim .App. 1985). Jury-charge error is egregiously harmful if it: (1) affects the very basis of the case, (2) deprives the defendant of a valuable right, or (3) vitally affects a defensive theory. *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex. Crim. App. 2007).

In this case, appellant's testimony made the culpable mental state a contested issue. The court's instructions did not give the jury a vehicle by

which it could determine correctly the issue of intent, as applied to appellant's conduct. Because intent was the only contested issue, and appellant's sole defense, he suffered egregious harm by the erroneous definition of the intentional and knowing state of mind. Appellant suffered egregious harm by the failure to define correctly those terms as they applied to the instant case.

This case is distinguishable from any case in which appellant's defense was something other than that he lacked the requisite *mens rea* to commit the charged offense. Compare: *Reed v. State,* 421 S.W.3d 24, 29-30 (Tex. App. Waco 2013, pet. ref'd) and cases cited therein holding that where no defense is presented which would directly affect an assessment of mental culpability for the alleged offense, there can be no egregious harm.

**Conclusion and Prayer**

WHEREFORE, PREMISES CONSIDERED, appellant prays that the judgment of conviction be reversed and the cause remanded for new trial.

Respectfully submitted,

/s/ Allen C. Isbell
ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax: 713/236-1809
STATE BAR NO. 10431500
COUNSEL ON APPEAL

**Certificate of Service**

I hereby certify that on this 13th day of February, 2015, a true and correct copy of the foregoing Brief for Appellant has been sent to the District Attorney's Office, Appellate Division, and to Mr. Jesse Ralph Dains, appellant.

/s/ Allen C. Isbell
ALLEN C. ISBELL

**Certificate of Compliance**

The undersigned attorney on appeal certifies this brief is computer generated and consists of 3,816 words. Counsel is relying on the word count provided by the Word Perfect computer software used to prepare the brief.

/s/ Allen C. Isbell
ALLEN C. ISBELL