**Opinion filed April 16, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00091-CR

_____

## JOHN MARTINEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 13-7243**

### MEMORANDUM OPINION

John Martinez was charged in a ten-count indictment with one count of continuous sexual abuse of a young child, eight counts of indecency with a child, and one count of aggravated sexual assault of a child. After the State abandoned one count of indecency with a child at the close of evidence (Count Ten in the indictment), the trial court submitted nine counts to the jury. The jury found Appellant guilty of five counts of indecency with a child and one count of aggravated

sexual assault of a child. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011), § 22.021 (West Supp. 2014). The jury acquitted Appellant of the two remaining counts of indecency with a child (Counts Six and Nine). With respect to the one count of continuous sexual abuse of a young child (Count One), the jury was unable to reach a unanimous verdict. The trial court granted a mistrial on the count of continuous sexual abuse of a young child after the parties agreed to a mistrial without prejudice to the State's right to subsequently prosecute the offense.

The jury assessed Appellant's punishment at confinement for a term of ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice on the aggravated sexual assault conviction (Count Four). On three of the convictions for indecency with a child (Counts Two, Three, and Eight), the jury assessed Appellant's punishment at confinement for a term of ten years. On the remaining two convictions for indecency with a child (Counts Five and Seven), the jury assessed Appellant's punishment at confinement for a term of twenty years. The trial court ordered that all of Appellant's sentences are to be served concurrently. In one issue on appeal, Appellant challenges the sufficiency of the evidence to support his convictions. We affirm.

## *Background Facts*

The ten-count indictment alleged that Appellant committed various acts of sexual misconduct with three child victims: "EE" (Counts One, Two, and Three), "AR1" (Counts Four, Five, Six, Seven, and Eight), and "AR2" (Counts Nine and Ten).[1] We note at the outset that Appellant was not convicted of any counts pertaining to AR2 because the jury acquitted him of Count Nine and the State abandoned Count Ten. We additionally note that the jury acquitted Appellant of Count Six, which alleged indecency with a child committed against AR1. Finally,

---

[1]We will use the same identifiers for the children that were used in the indictment.

the trial court granted a mistrial on Count One, which alleged continuous sexual abuse of EE. Accordingly, Appellant's six convictions include two convictions for indecency with a child committed against EE (Counts Two and Three), one conviction for aggravated sexual assault committed against AR1 (Count Four), and three convictions for indecency with a child committed against AR1 (Counts Five, Seven, and Eight). The indictment alleged that each of the six convictions occurred on or about July 17, 2012.

On July 18, 2012, Sergeant Joe Martinez of the Lamesa Police Department was dispatched to a residence in Lamesa in reference to a report of sexual assault. T.G., the mother of AR1 and AR2 and the aunt of EE, reported to Sergeant Martinez that a man, who lived across the street in a camper trailer and whom the children called "Uncle Jay," had touched AR1 and EE inappropriately.[2] After talking to AR1 and EE, Sergeant Martinez made contact with Appellant at his trailer. Sergeant Martinez subsequently turned the investigation over to Detective Antonio Garcia. Detective Garcia advised Sergeant Martinez to request that the children be taken to the hospital for a "SANE exam." Detective Garcia subsequently made arrangements for AR1 and EE to be interviewed at the Child Advocacy Center in Midland.

Following the interviews of AR1 and EE, Detective Garcia contacted Appellant and requested to interview him. Appellant stated as follows in the interview:

> I remember my neighbor's kids named [AR1] and [EE] . . . came over to my trailer. And we were playing cards when [AR1] told me she needed to use the bathroom. I told [AR1] she needed to go to her house and use the bathroom. [AR1] said she could not wait. I told her she could use my bathroom, but she had to use the little trash can inside the bathroom to pee in because I had something on top of the toilet. After she finished, [AR1] asked me for the toilet paper. And I gave [EE] some

[2]The allegations concerning AR2 arose at a later date.

3

toilet paper to give to [AR1]. After [AR1] got out of the bathroom I asked [AR1] if she had cleaned herself good. [AR1] said yes. I told [AR1] I wanted to check, so I put my hand inside her pants and I touched her vagina. And I put my finger inside her vagina to see if her vagina was wet or not. I put my finger inside her vagina, but did not put the finger deep inside her. Before they both left my trailer I asked [EE] if her vagina was wet. [EE] did not say anything, so I put my hand inside [EE's] pants and I touched her vagina with my finger, and my finger might have went inside her vagina, but not too deep. This is not a big thing. It's more of a joke than anything else. I am just playing with the girls, not trying anything sexually. I wear shorts without underwear, and I think I pulled my shorts up one time and [AR1] and [EE] both saw my penis, but it was not -- it was only in a playing way. [AR1] and [EE] are very curious and are always looking inside my trailer, and they follow me wherever I go. And I think they have seen me pee when I go to the bathroom. After [AR1] and [EE] left my trailer and went outside and they got my bikes so they could go riding, I told them after they finished riding I wanted some p---y juice. The girls returned and left the bikes and went home. I did not see them anymore. I will no longer let anyone come over to my trailer because I don't need any problems.

AR1 and EE were nine years old at the time of trial. AR1 and EE are cousins. EE testified that she first met Appellant three years earlier. AR1 and EE would go to Appellant's trailer to ride bikes and play cards. AR1 and EE said that they had been inside Appellant's trailer.

EE testified that, when Appellant won at cards, "[h]e asks for . . . some p---y juice." EE said that Appellant took "off [her] underwears" and that she was naked from the waist down. EE indicated on a doll that Appellant would touch her genital area. EE said that this happened for three years. EE said that Appellant touched her genital area with "his middle" and indicated on the doll that it was his genital area. EE also said that Appellant made her touch "his middle."

On the day that the report was made to the police department, AR1 and EE went over to Appellant's trailer to ride bikes. AR1 testified that Appellant said that, if AR1 wanted to ride the bike, she "ha[d] to give him p---y juice." AR1, EE, and

4

Appellant went inside his trailer. AR1 testified that Appellant touched her "middle," which is her term for genitalia. AR1 indicated on a doll that Appellant touched her middle underneath her clothes. AR1 said that Appellant "was trying to put his hands in my middle." AR1 answered in the affirmative that Appellant's fingers were inside her middle. AR1 also testified that Appellant touched her on her "boobs" and her "bottom" over her clothes. AR1 also indicated that Appellant had touched her the day before on her "boobs" and her "bottom" as well. EE testified that she saw Appellant touch AR1 on both her breast and genital area.

With respect to Appellant's conduct with EE, AR1 said that Appellant grabbed EE's hand and "put his hand in her pants and touched her." AR1 saw Appellant touch EE in her "middle" inside her pants. EE answered affirmatively when asked if Appellant touched her genital area on the day of the incident. AR1 testified that she and EE then left and told AR1's mother what had happened.

AR1 testified that she had seen Appellant's "middle" three times prior to the day of the incident that gave rise to the police report. AR1 said that Appellant would keep his pants on but would show his "middle" to both AR1 and EE. EE answered affirmatively when asked if she remembered Appellant showing his middle when he played cards with her. EE said it had happened three times.

As noted previously, AR1 and EE went to the Child Advocacy Center in Midland to be interviewed. There they met with Michelle Simer, the interviewer at the Child Advocacy Center, who recorded her interviews of AR1 and EE. AR1's and EE's interviews were played for the jury. Both AR1 and EE described essentially the same series of touching and exposure by Appellant as they described in their trial testimony.

Appellant testified on his own behalf during the guilt/innocence phase. He testified that he fixed bikes for the neighborhood. Appellant said that EE hurt herself on one of the bikes and "pulled her pants down and she had her legs open, and then

she called me and she said, 'Uncle Jay, come here and look at this.' And she showed me her -- her thing. She said, 'It hurts.' She asked me if it was red." Appellant then testified that he did not have anything to put on it and sent her home. Appellant also said that AR1 used his restroom and "[came] out with her pants down. Because I had told her, joking, you know, 'Clean yourself good.' She wanted me to check and see if it was -- see if she had cleaned good. And I said, 'No, I don't have to do that.' I said, 'If you clean yourself good, that's fine.' And she wouldn't pull her pants up."

Appellant denied ever touching EE or AR1. Appellant also denied ever exposing himself to EE or AR1. Appellant admitted that he gave a signed statement regarding the events. As noted previously, the statement was admitted into evidence. However, Appellant argued that he did not know what he was signing. Appellant "thought it had something to do with what [the police] were doing as far as booking [him]." Appellant denied the statement that he had put his hand inside AR1's pants and touched her vagina to see "if she had cleaned herself good." Appellant did admit that the following statement was "probably" true: "I wear[] shorts without underwear, and I think I pulled my shorts up one time and [AR1] and [EE] both saw my penis, but it was only in a playing way."

*Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence supporting his convictions. He primarily contends that there was insufficient evidence to establish that he engaged in the alleged acts with the intent to arouse or gratify his sexual desire. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense

beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

*Aggravated Sexual Assault*

Appellant argues that there was legally insufficient evidence to show that Appellant had any intent to arouse or gratify his sexual desire by causing the penetration of AR1's sexual organ with his finger. Appellant bases his contention on the argument that he wanted to check if AR1 had cleaned herself after using the restroom, so he put his finger inside AR1's vagina. As he indicated in his statement to the police, his motivation for doing this was as follows: "[i]t's more of a joke than anything else. I am just playing with the girls, not trying anything sexually."

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means. PENAL § 22.021(a)(1)(B)(i). An intent to arouse or gratify the sexual desire of any person is not an element of aggravated sexual assault. *Id.*; *see Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998) (quoting *Cunningham v. State*, 726 S.W.2d 151, 155 (Tex. Crim. App. 1987)). Appellant's admission that he

7

inserted his finger into AR1's vagina was sufficient to support his conviction for aggravated sexual assault. *See Villa v. State*, 417 S.W.3d 455, 461–62 (Tex. Crim. App. 2013). Appellant's purported misunderstanding of the nature of the statement that he gave to the police and his motivations in dealing with the victims were credibility issues for the jury to resolve. Under the applicable standard of review, we presume that the jury resolved these credibility determinations against Appellant. Additionally, AR1 said that Appellant "was trying to put his hands in my middle," and she answered in the affirmative that Appellant's fingers were inside her "middle." The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2014); *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt). We conclude that any rational trier of fact could have found the elements of the offense of aggravated sexual assault of a child beyond a reasonable doubt.

*Indecency with a Child*

Appellant's remaining five convictions are for indecency with a child.[3] Counts Two, Three, and Eight alleged that Appellant committed indecency with a child by exposure. A person commits the offense of indecency with a child by exposure if, with intent to arouse or gratify the sexual desire of any person, the person exposes the person's anus or any part of the person's genitals, knowing the child is present, or causes the child to expose the child's anus or any part of the child's genitals. PENAL § 21.11(a)(2). Counts Five and Seven alleged that Appellant committed indecency with a child by sexual contact. A person commits the offense

---

[3]A person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity. *Aekins v. State*, 447 S.W.3d 270 (Tex. Crim. App. 2014).

of indecency with a child by sexual contact if, with the intent to arouse or gratify the sexual desire of any person, he touches the anus, breast, or any part of the genitals of a child, including through clothing. *Id.* § 21.11(a)(1), (c)(1). Accordingly, an essential element of the offense of indecency with a child by either exposure or sexual contact is the mental state that accompanies the forbidden conduct: the specific intent to arouse or gratify the sexual desire of any person. *See McKenzie v. State*, 617 S.W.2d 211, 213 (Tex. Crim. App. [Panel Op.] 1981).

In a prosecution for indecency with a child, the defendant's specific intent to arouse or gratify his sexual desire can be inferred from his conduct, his remarks, and all surrounding circumstances. *Id.* at 216; *Moore v. State*, 397 S.W.3d 751, 754 (Tex. App.—San Antonio 2013, no pet.). Intent can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Further, a complainant's testimony alone is sufficient to support a conviction for indecency with a child. *Moore*, 397 S.W.3d at 754; *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.).

*Count Two: Indecency with a Child by Exposure to EE*

The indictment alleged in Count Two that Appellant intentionally or knowingly exposed his genitals to EE with the intent to arouse or gratify his sexual desire. Appellant challenges the sufficiency of the evidence establishing that EE saw his genitals. He additionally challenges the sufficiency of the evidence regarding his intent to arouse or gratify his sexual desire. Appellant bases his contention that there was insufficient evidence that EE saw his genitals on alleged inconsistencies in EE's and AR1's testimony and on the fact that EE could not describe his genitals. We presume that the jury resolved conflicts in the evidence in favor of the prosecution, and we defer to that determination. EE testified that she had seen Appellant's "middle" three times and that it had happened when they were

playing cards together. AR1 also said that Appellant would show his "middle" to both AR1 and EE. Child victims of sexual crimes are afforded great latitude when testifying, and they are not expected to testify with the same clarity and ability as is expected of a mature and capable adult. *Villalon*, 791 S.W.2d at 134. Furthermore, Appellant indicated in his written statement that it was "probably" true that EE saw his penis.

With regard to evidence of Appellant's intent to arouse or gratify his sexual desire, Appellant's intent can be inferred from the act itself. *McKenzie*, 617 S.W.2d at 216. The evidence that Appellant committed indecency with a child on multiple instances is additional evidence of an intent to arouse or gratify his sexual desire. *See Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant exposed himself to EE and that he possessed the specific intent to arouse or gratify his sexual desire when doing so.

*Count Three: Indecency by Exposure of EE*

The indictment alleged in Count Three that Appellant intentionally or knowingly caused EE to expose her anus and genitals or any part of her genitals to him with the intent to arouse or gratify his sexual desire. Appellant challenges the sufficiency of the evidence that he caused EE to expose herself to him. He additionally challenges the sufficiency of the evidence showing that he committed the act with the intent to arouse or satisfy his sexual desire.

EE testified that, when Appellant won at cards, he would "ask[] for . . . some p---y juice." He would then take off EE's underwear, and she would be naked from the waist down. Appellant, however, testified that EE "pulled her pants down and she had her legs open" but that it was simply to determine if she had hurt herself on one of the bikes. As noted above, we presume that the factfinder resolved the

10

conflicting evidence in favor of the prosecution and defer to that determination. The testimony that Appellant took off EE's underwear as a reward for "winning" at cards is evidence that Appellant caused the exposure of EE's anus or genitals to him and that he did it with the requisite intent to arouse his sexual desire. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the alleged crime beyond a reasonable doubt.

*Counts Five, Seven, and Eight: Indecency with a Child with AR1*

The indictment alleged in Count Five that Appellant intentionally or knowingly engaged in sexual contact with AR1 by touching her genitals. Count Seven alleged that Appellant intentionally or knowingly engaged in sexual contact with AR1 by touching her breast. Count Eight alleged that Appellant intentionally or knowingly exposed his genitals to AR1. Each of these counts alleged that Appellant committed these acts with the intent to arouse or gratify his sexual desire. Appellant restricts his challenge to the sufficiency of the evidence supporting these convictions to the common element of his intent to arouse or gratify his sexual desire.

We have previously noted that Appellant's intent to arouse or gratify his sexual desire can be inferred from the individual alleged acts themselves. *McKenzie*, 617 S.W.2d at 216. The evidence that Appellant committed multiple acts of a sexual nature with multiple victims is further evidence of his intent to arouse or gratify his sexual desire. *See Abbott*, 196 S.W.3d at 341. Furthermore, there is evidence that Appellant conditioned riding his bicycles and card games on sexual conduct with the minor victims.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant possessed the specific intent to arouse or gratify his sexual desire when

engaging in the alleged conduct.  We overrule Appellant's sole issue on all six of his convictions.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

April 16, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.