

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARK BROWN, | § | No. 08-16-00097-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20160D00892) |
| | § | |

## **O P I N I O N**

Mark Brown appeals his conviction for six counts of possession of a controlled substance with intent to deliver. In two issues, Brown contends that: (1) possession of a controlled substance with intent to deliver is legally and factually the same as burglary and theft, so that, having already pleaded guilty to burglary and theft of a pharmacy, his subsequent prosecution on the possession charges violated constitutional protections against double jeopardy; he also contends in his first issue that the subsequent prosecution violated his right to due process because, having already pleaded guilty to theft of the drugs, his options in his defense were significantly constrained; and (2) the State used false and misleading testimony regarding the location of a wastebasket filled with prescription drugs to secure his conviction, thus depriving him of due process. We affirm.

## BACKGROUND

On January 31, 2013, narcotics officers were conducting surveillance of Room 150 of a Motel 6 on Lomaland in El Paso, Texas. The room was being rented by the Appellant, Mark Brown, and one of his associates. Officers were investigating the theft of a large quantity of prescription pills from a local pharmacy and had identified the two men as possible suspects. Around 7:00 a.m., police observed Brown and his associate arrive at the motel and begin moving several wastebaskets back and forth between their vehicle and motel room, as well as two large duffel bags. After about an hour, the men packed the two duffel bags in their vehicle along with one of the wastebaskets and abandoned a second wastebasket in a corridor near the motel's trash can. With Brown driving, the men left the motel and police followed in unmarked vehicles.

With officers tailing them, Brown and his associate pulled into a gas station and parked next to a dumpster. Brown's associate got out of the vehicle and threw a wastebasket they had brought with them into the dumpster. The two then filled up their vehicle at the nearest gas pump and got back on the road. One of the officers stayed behind at the gas station to inspect what they had thrown into the dumpster. In the dumpster, the officer found the discarded wastebasket. It was filled to the halfway point with prescription-medication bottles. The officer radioed the officers who were tailing Brown and his associate and informed them of the find. After doing this, he called for evidence custodians to come to the gas station to photograph and take custody of the prescription drugs.

Meanwhile, the officers who were following the men had determined it was likely that more prescription drugs would be found in the men's vehicle. One of the officers observed Brown was speeding and called for a marked police cruiser to pull them over. Officer Alex Rayas

2

conducted the traffic stop. Brown provided Rayas with a license falsely identifying him as Johnny Sweed and told Rayas he and his associate were driving to Houston. He also informed Rayas the vehicle was a rental. Rayas asked Brown if there was anything illegal in the vehicle, specifically weapons or narcotics. Brown denied there were either, but when Rayas asked for permission to search the vehicle Brown refused. Rayas returned to his patrol car to run a warrant check on Brown and while there requested a K-9 unit.

The K-9 unit arrived within minutes, and the dog alerted to the rear exterior of the vehicle. The K-9 officer searched the interior of the vehicle where the dog had alerted and discovered a large quantity of prescription-medication bottles inside two duffel bags. As soon as the officers informed Brown of their discovery, he made a run for it. Unfortunately for Brown, he tripped on some loose rocks and fell to the ground, allowing police to catch up and detain him. The officers later testified that based on their training and experience, the large quantity of prescription pills they recovered indicated that Brown and his associate intended to sell the drugs.

Brown was charged with burglary and theft for stealing the prescription medications from the local pharmacy. He was also charged with possession of a controlled substance with intent to deliver. Brown pleaded guilty to burglary and theft, but his plea agreement did not purport to resolve his pending charges for possession with intent to deliver. Brown rejected a plea offer on his possession charges and moved to quash the indictment on double jeopardy grounds. The trial court denied his motion and a jury subsequently convicted him of six counts of possession with intent to deliver. The trial court assessed punishment at 10 years' confinement for Counts I-III and VIII, and 15 years for Counts V and IX, with sentences to run concurrently. Brown timely filed a motion for new trial in which he alleged the State had used misleading evidence to convict

3

him.   After hearing evidence and arguments, the trial court denied Brown's motion for new trial. This appeal followed.

## DISCUSSION

Brown raises two issues on appeal.   In his multifarious first issue, Brown contends his burglary and theft charges were legally and factually the same as his charge for possession with intent to deliver, thus violating his constitutional protections against double jeopardy.   In the second part of his first issue, Brown asserts that his subsequent prosecution for possession after he had already pleaded guilty to burglary and theft of the prescription medications violated his right to due process by severely limiting his options in his defense against the possession charges.   In his second issue, Brown contends the testimony of one of the officers regarding the location of the wastebasket filled with prescription bottles was materially false and misleading, thus depriving him of due process.

### Double Jeopardy and Due Process

In his first issue, Brown contends his subsequent prosecution was a violation of double jeopardy protections.   He also asserts the prosecution violated his right to due process because he had already pleaded guilty to theft of the pills that formed the basis of his charge for possession with intent to deliver.

### *Standard of Review*

When assessing a trial court's ruling on a motion to quash, our standard of review depends on which judicial actor is best positioned to determine the issue in controversy.   *Holton v. State*, 487 S.W.3d 600, 608 (Tex.App.—El Paso 2015, no pet.).   When, as here, the facts are uncontested, and the trial court's ruling does not depend on an evaluation of the credibility and

4

demeanor of witnesses, we review the trial court's ruling *de novo*. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex.Crim.App. 1999). This is so because the trial court is not in an appreciably better position than is the appellate court to decide the issue. *Holton*, 487 S.W.3d at 608-09.

### *Applicable Law*

The Fifth Amendment to the United States Constitution provides that a person shall not be twice put in jeopardy for the same offense. *See* U.S. CONST. AMEND. V. The Fifth Amendment's protection against double jeopardy is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Brown v. Ohio*, 432 U.S. 161, 164 (1977). The Texas Constitution provides substantially identical protections against double jeopardy. *See* TEX. CONST. art. 1, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.").

The threshold question in a double-jeopardy analysis is whether the defendant is being punished or prosecuted for the "same offense." *State v. Perez*, 947 S.W.2d 268, 270 (Tex.Crim.App. 1997)(*citing United States v. Dixon*, 509 U.S. 688, 696 (1993)). In determining whether the offenses are the same, we inquire into legal sameness and factual sameness. *Ex Parte Castillo*, 469 S.W.3d 165, 172 (Tex.Crim.App. 2015). Legal sameness depends on the pleadings and statutory law—not the record—to ascertain whether two offenses are the same. *Id*., at 172. Factual sameness requires us to examine the entire record to determine if the same offenses have been alleged. *Id*. Only if the offenses are legally the same do we inquire into factual sameness. *Id*., at 169 (*citing Ex parte Benson*, 459 S.W.3d 67, 72 (Tex.Crim.App. 2015)).

When two different statutory provisions are at issue, we determine legal sameness by

applying the "same-elements test" to determine whether "each provision requires proof of a fact which the other does not." *Castillo*, 469 S.W.3d at 168 (*quoting Dixon*, 509 U.S. at 697); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932). Under that test, lesser-included offenses are legally the same as a greater offense unless the lesser-included offenses require proof of a fact not required to establish the greater offense. *Id.* An offense is a lesser included of another if "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." *See* TEX.CODE CRIM.PROC.ANN. art 37.09(3). "Where two crimes are such that the one cannot be committed without necessarily committing the other, then they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *Aekins v. State*, 447 S.W.3d 270, 280 (Tex.Crim.App. 2014)(*citing Ex parte Pruitt*, 233 S.W.3d 338, 348 (Tex.Crim.App. 2007)).

In determining whether the offenses are factually the same, we determine the allowable unit of prosecution and then review the trial record to establish how many units have been shown. *Castillo*, 469 S.W.3d at 169 (*citing Benson*, 459 S.W.3d at 72). An allowable unit of prosecution turns on statutory construction and usually requires ascertaining the gravamen of the offense. *Id.* If a reviewing court concludes the offenses are based on the same unit of prosecution, then the offenses are factually the same for double jeopardy purposes. *Id.* The burden is on the appellant to prove legal sameness and factual sameness. *Id.*

### *Analysis*

#### Double Jeopardy

The statutory offense of possession of a controlled substance with intent to deliver, which Brown was charged with here, is committed by: (1) possessing; (2) a controlled substance; (3)

6

with the intent to deliver. TEX.HEALTH & SAFETY CODE ANN. § 481.112. Burglary, which Brown previously pleaded guilty to, is accomplished by: (1) entering or remaining concealed in; (2) a building or habitation; (3) with intent to commit a felony, theft, or assault therein; (4) without the effective consent of the owner.[1] TEX.PENAL CODE ANN. § 30.02(a). Theft, which Brown also previously pleaded guilty to, is committed when a person: (1) unlawfully appropriates property; (2) with the intent to deprive the owner of that property. TEX.PENAL CODE ANN. § 31.03(a).

Brown argues that his theft of the prescription pills and their possession with the intent to deliver are inextricable, primarily because the prosecution proved his intent in the later only by reference to the quantity in his possession. He contends this is so because under the State's theory of prosecution the theft of the drugs was simultaneous with the possession with intent to deliver. While novel, this theory is unpersuasive. Applying the legal-sameness test, as we are required to do, we find the provisions of the statute prohibiting possession of a controlled substance with intent to deliver requires proof of a fact not required by the burglary and theft statutes. Under the theft statute, the State was required to prove that Brown unlawfully appropriated the prescription medications from the rightful owner without the owner's consent but did not have to prove in that case that Brown intended to deliver the stolen property. *See* TEX.PENAL CODE ANN. § 31.03(a); TEX.HEALTH & SAFETY CODE ANN. § 481.112. In the prosecution underlying the present case, the State was not required to prove unlawful appropriation—only possession of the controlled substances with the requisite intent to deliver. *See id*. Similarly, in his prior prosecution for burglary, the State was required to prove unlawful entry—an element unnecessary to prove

---

[1] The record provided does not include a copy of the indictments for burglary or theft or a copy of Brown's plea agreement.

possession with intent to deliver. *See* TEX.PENAL CODE ANN. § 30.02(a). In the present case, the State was required to prove unlawful possession and intent to deliver, and neither of those elements are required to prove a completed burglary, which can be accomplished without unlawful possession of any property. *See id*. Accordingly, because each statutory provision requires proof of a fact which the other does not, Brown has failed to demonstrate legal sameness for purposes of showing he was being prosecuted or punished for the same offense. *Castillo*, 469 S.W.3d at 168. Either the burglary or the theft could have been committed without necessarily committing the offense of possession with intent to deliver. *Aekins*, 447 S.W.3d at 280. Having failed to show legal sameness, we need not engage in a factual sameness analysis. *Castillo*, 469 S.W.3d at 169. Brown's prosecution for possession of a controlled substance with intent to deliver did not violate the constitutional protections against double jeopardy.

Due Process

In the second part of Brown's first issue, he contends the State's decision to prosecute him after he had pleaded guilty to theft and burglary violated his right to due process under the federal constitution and due course of law under the Texas Constitution[2] by making his defense in the subsequent case substantially more difficult. He asserts his right to due process was violated in three ways: (1) the subsequent prosecution denied him his fundamental right to a fair trial because, having already pleaded guilty to theft, he could not contest the State's allegation of possessing the drugs; (2) the subsequent prosecution gave the State unfair leverage in plea negotiations because he was faced with the dilemma of either accepting the State's offer and pleading guilty to simple possession—and thereby losing his opportunity to litigate his double

---

[2] As previously noted, the Texas Constitution provides substantially identical protections against double jeopardy. *See* TEX.CONST. art. 1, § 14.

8

jeopardy contentions—or going to trial having already pleaded guilty to theft of the drugs and face a minimum of fifteen years on certain counts; and (3) his prior guilty plea severely limited his right to testify on his own behalf because theft offenses are generally available to impeach a defendant and his prior plea would have undercut any explanation he could have otherwise provided. The State contends this error was not preserved for review and is thus waived. If the error was properly preserved, the State contends the Court of Criminal Appeals has already squarely rejected arguments that due process is violated simply because a defendant's prior guilty pleas make defenses of subsequent prosecutions more difficult.

To preserve error for review, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Pena v. State*, 353 S.W.3d 797, 807 (Tex.Crim.App. 2011)(*quoting* Tex.R.App.P. 33.1(a)(1)(A)). The objection must be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error. *Id*., (*citing Ford v. State*, 305 S.W.3d 530, 533 (Tex.Crim.App. 2009)).

In his motion to quash the indictment, Brown made the following complaint regarding due process:

> Even if this court finds that double jeopardy does not automatically bar this prosecution, it should prohibit this subsequent prosecution without a showing by the State of good cause for indicting Mr. Brown after he already pleaded guilty to offenses arising out of the same criminal episode. This prosecution violates Mr. Brown's due process rights, his rights to counsel and to have a jury decide all of the facts in his case, his right to be free from multiple prosecutions, and his fundamental right to a fair trial—which is now nearly impossible given his prior plea of guilt. [Citations to U.S. and Texas Constitutions]. Defendant asserts that the Texas Due Course of Law provision provides different or greater substantive due process protection than the federal Due Process Clause of the 14th Amendment.

9

While not as detailed as the arguments he currently pursues, this was sufficiently specific to make the trial court aware he was raising a due process complaint, and that the complaint was based on the difficulty he would face at trial due to his having already pleaded guilty to the theft of the prescription medications. No "magic words" are required; as long as the objection is clear enough to provide the trial court with an opportunity to address the purported error, the error is preserved. *Pena*, 353 S.W.3d at 807. Therefore, Brown's complaint is properly before us.

Turning to his contentions, Brown argues the State's decision to prosecute him after he had pleaded guilty to theft and burglary violated his right to due process by seriously handicapping his defense. Brown cites no authority holding due process is violated where a prosecution is based partially on facts arising out of an offense that defendant has previously pleaded guilty to. He also does not state precisely what defense he was prevented from advancing. The Court of Criminal Appeals has rejected arguments that due process is violated when the defendant's defense is handicapped due to prior crimes or other admissible evidence unfavorable to the defense. *See Soria v. State*, 933 S.W.2d 46, 57–58 (Tex.Crim.App. 1996)(op. on reh'g)(while the Fifth Amendment shields a defendant from having a mental health expert testify against him based on communications made during a court-ordered psychiatric examination, defendant being forced to waive that right in order to introduce his own psychiatric testimony to support his insanity defense does not offend due process); *Cantu v. State*, 738 S.W.2d 249, 256 (Tex.Crim.App. 1987)(rejecting defendant's argument that his due process rights were violated where he had to choose between testifying in order to rebut the State's introduction of an extraneous offense and retaining his Fifth Amendment right against self-incrimination).

In *Vaughn v. State*, the Court of Criminal Appeals addressed a similar scenario in which

10

the defense was hampered by a defendant's prior position. *Vaughn v. State*, 931 S.W.2d 564 (Tex.Crim.App. 1996). During the guilt or innocence phase of the trial, the defendant testified that she was innocent. *Id*., at 565. The jury did not believe her testimony and found her guilty of aggravated assault. *Id*. At the punishment phase, the defendant again took the stand and maintained her innocence. *Id*. The prosecutor highlighted her refusal to accept responsibility during closing arguments and urged the jury to punish her more harshly for that reason. *Id*. On appeal, the defendant argued that her right to due process was violated in that she was presented with a dilemma during the punishment phase. *Id*., at 566. She could admit her guilt and ask for mercy, but this admission would be inconsistent with her protestations of innocence at the guilt or innocence phase and thus potentially open her up to aggravated perjury charges. *Id*. This choice would also waive her option to argue insufficiency of the evidence on appeal. *Id*. Her other option—the one she chose—was to maintain her innocence and thus invite the prosecutor to urge the jury to punish her more harshly for her recalcitrance. *Id*. In reaching its decision, the Court noted that the defendant wanted to avoid prosecution for perjury but also wanted to seek leniency from the jury by "coming clean." *Id*., at 567. The Court held that "[n]o constitutional violation is presented by . . . a difficult decision for a defendant," and the fact that she would potentially have to answer perjury charges and waive a sufficiency challenge if she admitted her guilt at punishment did not violate due process or her right against self-incrimination. [Internal citations omitted]. *Id*. at 568. These were merely factors that should inform "a proper, well-founded trial strategy." *Id*.

Here, Brown is arguing that his decision to plead guilty to theft and burglary—and thus avoid trial and the potential of a lengthier sentence—handicapped his defense in his subsequent

11

prosecution for possession with intent to deliver, and therefore was a violation of due process. Brown was aware when he pleaded guilty to theft and burglary that the possession charges were still pending. As in *Vaughn*, Brown wants to obtain the advantages that his guilty plea provided without facing the disadvantages of that plea being used as evidence in his subsequent plea negotiations and trial for a different offense. A difficult tactical decision for a defendant, however, is not a violation of due process. *Vaughn*, 931 S.W.2d at 567. The fact that his prior plea could be used to impeach his testimony or otherwise be used as evidence did not violate due process. The same is true for his complaint that the prior plea placed him in a disadvantaged position during negotiations for his possession charges. *See Dixon v. State*, No. 14-98-01447-CR, 2000 WL 675111, at *2 (Tex.App.—Houston [14th Dist.] May 25, 2000, pet. ref'd)(not designated for publication)(no due process violation where State's plea offer forced defendant to choose between developing evidence of his defensive theory at trial—but thereby risking a harsh sentence—and accepting the State's plea and thus losing the chance to develop his defensive theory). Accordingly, Brown's rights to due process and due course of law were not violated because of the disadvantages he faced in his subsequent prosecution. Issue One is overruled.

## False and Misleading Testimony

In his second issue, Brown contends the testimony presented by the State that the wastebasket containing prescription medications was found in his vehicle—when in fact it was found in the dumpster where Brown and his associate had abandoned it—was materially false and misleading, and thus deprived him of due process. The State counters that the jury was made fully aware of the conflict in the testimony and evidence and the defense had a full and fair opportunity to explore and clarify that conflict but failed to do so, and thus failed to show the

12

testimony left a false impression with the jury. Further, the testimony was impeached and discredited by the State's other witnesses and the evidence was otherwise sufficient to support his conviction without the wastebasket testimony, and Brown accordingly fails to show the testimony was material.

### Standard of Review

We review factual findings concerning whether a witness's testimony is false deferentially. *Ex Parte Weinstein*, 421 S.W.3d 656, 664 (Tex.Crim.App. 2014). But we review the legal conclusion of whether false testimony was "material" *de novo*. *Id*.

### Applicable Law

Regardless of whether done knowingly or unknowingly, the State's use of material testimony that is false to obtain a conviction violates a defendant's right to due process under the Fifth and Fourteenth Amendments. *Ex parte Chavez*, 371 S.W.3d 200, 207–08 (Tex.Crim.App. 2012). The due-process inquiry is twofold: (1) was the testimony, in fact, false, and if so, (2) was the testimony material. *Weinstein*, 421 S.W.3d at 665. As to the falseness inquiry, the false testimony or evidence need not rise to the level of perjury to violate due process; it is sufficient if the testimony or evidence is "false." *Id*., at 665–66. But whether the testimony is "false" is determined by asking whether the testimony, taken as a whole, "gives the jury a false impression." *Chavez*, 371 S.W.3d at 208. If the testimony is determined to be false, we must then determine whether the testimony was "material." *Weinstein*, 421 S.W.3d at 665. False testimony is material if there is a "reasonable likelihood" that it affected the judgment of the jury. *Id*., (*citing Chavez*, 371 S.W.3d at 206–07).

### Analysis

13

Here, the complained of testimony was given by Sergeant Horacio Maldonado. Maldonado testified that he was part of the team following Brown and his associate. He observed the men leave the motel and stop at the gas station. He stated he saw the men throw an item into the dumpster at the gas station and continued following them when they left the station. Regarding what was thrown into the dumpster, Maldonado stated that "[a]fter they put gas and they left the area, one of my detectives went by to see what was thrown. At that point, the detective advised me, over the radio, that it was several canisters of prescription pills." The detective who checked the dumpster was Detective Esteban Anchondo. Maldonado stated that Anchondo later showed him what he had found in the dumpster, and that it was several hundred canisters of prescription pills. Once Brown and his associate were pulled over and the vehicle had been searched, Maldonado arrived on the scene of the traffic stop to see what had been found. He stated he observed several containers of pills in a duffel bag in the rear-hatch area of the vehicle. At this point in his testimony, the State introduced through Maldonado Exhibits 3 through 14, which Maldonado testified accurately depicted the vehicle Brown was driving and the items found therein after the K-9 search. One of the exhibits, State's Exhibit 6, depicted a wastebasket half-filled with prescription bottles. In the photo, the wastebasket was sitting on the floorboard in the front-passenger compartment of a vehicle. Maldonado responded to questions by the State, testifying to what he observed and the prescriptions pills that had been found in the duffel bags. When asked about State's Exhibit 6, Maldonado testified that it was "a plastic trash can containing more prescription medication." The State asked him where it had been found, and Maldonado replied, "[t]hat looks like it's in the 2012 Ford Escape," referring to Brown's vehicle. The following exchange then occurred:

14

[State]: And, again, the items found in the two bags and the trash can were located in that vehicle during the course of the traffic stop; is that correct?

[Maldonado]: That's correct.

The State continued questioning Maldonado regarding his experience in investigations and what insight his training and experience provided in this case.

At the pretrial hearing on Brown's motion to suppress, Maldonado had testified regarding the drugs found in the wastebasket in the dumpster as being the same variety of prescriptions located in the duffel bags, but his testimony was that they were found separately. After his subsequent inconsistent testimony at trial, he was cross-examined by Brown and during cross confirmed that a number of prescription drugs were found in the dumpster where Brown's associate had abandoned them. But the issue of State's Exhibit 6 and the inconsistency was never explored.

Officer Martin Moncada, the K-9 officer who had discovered the drugs in Brown's vehicle, later testified regarding the drugs he had found. Moncada testified he found prescription bottles in duffel bags located in the rear area of the vehicle. Moncada discussed the wastebasket in the following exchange:

[State]: Officer Moncada, when you searched the rest of the vehicle, did you locate a trash can?

[Moncada]: I do not recall if I located the trash can or not.

[State]: Looking at State's Exhibit 6, do you recall seeing this item at the scene?

[Moncada]: I remember now watching the picture, but I don't have individual recollection of me actually -- it's been three years, so I don't remember the trash can.

Detective Anchondo also testified regarding the wastebasket, stating that Brown and his associate

15

brought only one wastebasket with them in the vehicle when they left the motel. He stated that he observed the men discard a wastebasket in the dumpster at the Valero and detectives found it filled with prescription drugs. The issue was further discussed during closing arguments. Brown argued to the jury that the State failed to prove Brown's intent to deliver because there was no evidence of his intent beyond the fact of the large quantity of prescription medication found in his possession. In pressing the argument on intent, he argued he could not have intended to deliver the prescription medications found in the gas station dumpster because his having thrown them away clearly showed he did not intend to deliver them. He then addressed the conflict in Maldonado, Anchondo, and Moncada's testimony regarding where the wastebasket was found:

> [Counsel]: And where does he tell you that the dog, you know, sits? In the rear. The dog sits in the rear of the vehicle -- the hatch area -- and he sits there. And he's sitting there, but then there's also a picture of a wastebasket in the passenger area of the car. And Moncada -- he doesn't mention it. How did it get there? We hear about the wastebasket today. We heard about it today.
>
> I brought back the evidence technician, Detective Sanchez. And what does he tell you? I mean, I was -- you know, well, okay. So Detective Anchondo gave you a box. No, no, no. It was in a wastebasket. The State cleared it up. It was in a wastebasket. How does a wastebasket get in the car? And why does the dog not detect it on the passenger side? That's not for me to answer. . . . Conflict of testimony.

In its rebuttal, the State again discussed the wastebasket and emphasized its location in the vehicle along with the full duffel bags.

In his motion for new trial, Brown asserted that although State's Exhibit 6 was presented to the jury as being a photograph of a wastebasket found in the interior of Brown's vehicle, it was not Brown's vehicle that was shown in the photograph. He contended that false evidence was used by the State to demonstrate Brown's intent to deliver. At the hearing on his motion for new trial, Brown introduced Defense Exhibit 1, which was a photograph of the driver and passenger

16

area of Brown's vehicle, contending it demonstrated State's Exhibit 6 depicted the wastebasket in a vehicle other than Brown's. Brown testified that there could not have been a wastebasket of drugs in his vehicle's passenger compartment because his associate was sitting there when they were pulled over. On cross-examination, Brown acknowledged that he had heard the inaccurate testimony and had at the time told his attorney that it was not his vehicle depicted in State's Exhibit 6. Brown's attorney later stated that when Brown had told him this at trial he believed Brown was lying.

Brown argued that the two photographs clearly depicted two different vehicles, and that the State used State's Exhibit 6 to argue that the wastebasket's presence in Brown's vehicle showed his intent to deliver the drugs in the wastebasket. He asserted that if the State had not presented that false evidence, Brown could have potentially been acquitted on the intent-to-deliver element as to the drugs in the wastebasket. The State emphasized Officer Moncada's testimony that he could not recall the wastebasket being in the vehicle. The State also contended that even without the wastebasket, the quantity of drugs found in the duffel bags were sufficient alone to support his conviction for possession with intent to deliver.

The trial court stated that based on her examination of the exhibits, State's Exhibit 6 and Defense Exhibit 1 depicted two different vehicles. But the court denied the motion for new trial because the discrepancy between the photographs was not new evidence as State's Exhibit 6 had been shown to the defense prior to its introduction. Accordingly, it was insufficient to merit a new trial.

Here, the State acknowledges that State's Exhibit 6 does not depict the interior of Brown's vehicle, and thus Sgt. Maldonado's testimony that that particular wastebasket was found in

Brown's vehicle was not factually correct. It argues, however, that this does not necessarily mean the testimony was "false" for purposes of the due process analysis. Brown, conversely, argues the factually-incorrect testimony merits reversal on all six counts. But the conflict in evidence regarding where the wastebasket was found was before the jury, and the jury necessarily passed on that conflict in rendering its verdict. While Detective Maldonado testified that State's Exhibit 6 "looks like" it depicted the wastebasket in Brown's vehicle, Detective Anchondo and Officer Moncada contradicted this testimony; the former did so by testifying Brown and his associate had loaded one wastebasket into the vehicle and watched them discard a wastebasket at the gas station dumpster, the latter by stating he did not recall finding the wastebasket in Brown's vehicle. During closing arguments, Brown emphasized this conflict in testimony regarding where the wastebasket was found, specifically referring to it as a "[c]onflict of testimony." Disagreements in testimony do not constitute the use of false testimony. *Onate v. State*, 62 S.W.3d 208, 212 (Tex.App.—El Paso 2001, pet. ref'd)(*citing Tucker v. State*, 15 S.W.3d 229, 234 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd)); *see also Ex parte De La Cruz*, 466 S.W.3d 855, 870–71 (Tex.Crim.App. 2015)(inconsistencies in testimony regarding location of shooting of victim do not support a finding of falseness for due process purposes because such a finding fails to take into account the jury's reconciliation of the conflicting evidence of the record). Furthermore, defense counsel had access to both State's Exhibit 6 and Defense Exhibit 1 before Detective Maldonado testified about the location of the wastebasket. At the time of Maldonado's testimony regarding State's Exhibit 6, Brown told his attorney that the exhibit did not depict his vehicle. Defense counsel did not impeach Maldonado's testimony on cross-examination despite having this information and despite the inconsistency between Maldonado's trial testimony and his testimony

18

during the suppression hearing. The Court of Criminal Appeals has held that due process is about fundamental fairness, and that nothing fundamentally unfair occurs where the defendant knows about factually inaccurate testimony by the State but does not take any corrective action. *Carmona v. State*, 698 S.W.2d 100, 105 (Tex.Crim.App. 1985)("This Court has held that if the facts not disclosed are known by the defendant or his counsel, he cannot object on appeal to the failure of the State to disclose the same.")(*citing Harris v. State*, 453 S.W.2d 838, 839 (Tex.Crim.App. 1970)). Based on the record before us, the testimony of Detective Maldonado did not deprive Brown of due process. Issue Two is overruled.

## CONCLUSION

Having overruled Issues One and Two, the judgment of the trial court is affirmed.

March 7, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)